JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS:** Marin County Local of the California Homeless Union; Camp Compassion; Jason Sarris; Lea Deangelo; Zach Bulware; Carrie Healon; Lisa Nicole Johnson; Donald Hobbs; Deborah Ann Miramontes; Charles Talbot; Bethany Allen; Michaelangelo Montez; Kalani Welch and all similarly situated homeless residents of Camp Compassion and others

**DEFENDANTS:** City of Novato; City Manager Adam McGill; Mayor Pat Eklund; Mayor Pro Tem Eric Lucan; Police Chief Matthew McCaffrey; Dir. of Public Works Chris Blunk and DOES 1-100

**(b)** County of Residence of First Listed Plaintiff     Marin

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*

*(For Diversity Cases Only)*           *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] |
| Citizen of Another State | [ ] 2 | [ ] | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] | Foreign Nation | [ ] 6 | [ ] |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane   365 Personal Injury - | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product    Product Liability | | | 400 State Reapportionment |
| 140 Negotiable Instrument | Liability   367 Health Care/ | | **INTELLECTUAL** | 430 Banks and Banking |
| 150 Recovery of Overpayment & Enforcement of Judgment | 320 Assault, Libel &    Pharmaceutical Slander     Personal Injury | **PROPERTY RIGHTS** 410 Antitrust | 820 Copyrights | 450 Commerce |
| 151 Medicare Act | 330 Federal Employers'    Product Liability | 830 Patent | | |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   368 Asbestos Personal 340 Marine     Injury Product | 835 Patent - Abbreviated 460 Deportation New Drug Application | | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 345 Marine Product     Liability Liability   **PERSONAL PROPERTY** | 840 Trademark | 480 Consumer Credit (15 USC 1681 or 1692) | 350 Motor |
| 160 Stockholders' Suits | 370 Other Fraud | **LABOR** 880 Defend Trade Secrets | | Vehicle |
| 190 Other Contract | 355 Motor Vehicle   371 Truth in Lending | 710 Fair Labor Standards Act of 2016 | | 485 Telephone Consumer |
| 195 Contract Product Liability | Product Liability   380 Other Personal | 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| 196 Franchise | 360 Other Personal    Property Damage Injury   385 Property Damage | Relations 861 HIA (1395ff) 740 Railway Labor Act 862 Black Lung (923) | | 490 Cable/Sat TV |
| | 362 Personal Injury -    Product Liability Medical Malpractice | 751 Family and Medical Leave Act | 863 DIWC/DIWW (405(g)) 864 SSID Title XVI | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | 790 Other Labor Litigation | 865 RSI (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights   **Habeas Corpus:** | 791 Employee Retirement Income Security Act | | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting   463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 442 Employment   510 Motions to Vacate | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/     Sentence Accommodations   530 General | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities -   535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | Employment   **Other:** | **IMMIGRATION** | | |
| | 446 Amer. w/Disabilities -   540 Mandamus & Other Other   550 Civil Rights | 462 Naturalization Application 465 Other Immigration Actions | | 950 Constitutionality of State Statutes |
| | 448 Education   555 Prison Condition 560 Civil Detainee - | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ]
- [ ]
- [ ]
- [ ]
- [ ]
- [ ]

| 1 Original | 2 Removed from Another District | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from Proceeding State Court | 6 Multidistrict | 8 Multidistrict |
|---|---|---|---|---|---|---|

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* |
|---|---|
| | 42 U.S.C. §1983 |
| | Brief description of cause: |
| | Complaint to Enjoin enforcement of ANTI-CAMPING ORDINANCE |

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint: |
|---|---|---|---|
| | | | **JURY DEMAND:**  ☒ Yes  ☐ No |

| **VIII. RELATED CASE(S) IF ANY** | *(See instructions):* | | |
|---|---|---|---|
| | | JUDGE _____ | DOCKET NUMBER _____ |

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 07/14/2021 | *[signature]* |

**FOR OFFICE USE ONLY**

| RECEIPT # _____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ *(specify)* | MAG. JUDGE _____ |
|---|---|---|---|---|

Agency Decision
950 Constitutionality of State Statutes

Litigation - Transfer     Litigation Direct File

JS 44 Reverse (Rev. 04/21)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**     **Origin.**  Place an "X" in one of the seven boxes.
           Original Proceedings.  (1) Cases which originate in the United States district courts.
           Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
           Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing
           date.
           Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
           Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or
           multidistrict litigation transfers.
           Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C.
           Section 1407.
           Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
           **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to
           changes in statute.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional
           statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
           Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction. Jury
           Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket
           numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

Anthony D. Prince (SBN # 202892)
General Counsel,
California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

Page - 1 -

## UNITED STATES COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIN COUNTY HOMELESS UNION, a local affiliate of the CALIFORNIA HOMELESS UNION, on behalf of itself and those it represents; CAMP COMPASSION, a Homeless Union-affiliated encampment in Lee Gerner Park; Individual plaintiffs JASON SARRIS; LEA DEANGELO; ZACH BOULWARE; CARRIE HEALON; LISA NICOLE JOHNSON; DONALD HOBBS; DEBORAH ANN MIROMONTES, LISA JOHNSON, CHARLES TALBOT, BETHANY ALLEN, MICHAELANGELO MONTEZ, DEBORAH ANN MIRAMONTES, KALANI WELSCH, and other similarly situated homeless persons including current residents of Camp Compassion homeless encampment,<br><br>vs.<br><br>CITY OF NOVATO; CITY MANAGER ADAM MCGILL; MAYOR PAT EKLUND; MAYOR PRO TEM ERIC LUCAN; CHIEF OF POLICE MATHEW MCCAFFREY; PUBLIC WORKS DIRECTOR CHRIS BLUNK and DOES 1-100,<br><br>          Defendants | Case No.:<br><br>**EX PARTE APPLICATION AND COMPLAINT FOR INJUNCTIVE RELIEF AND A DELARATORY JUDGMENT PURSUANT TO 42 U.S.C. § 1983, CALIFORNIA CONSTITUTION ART.1, § 7; 8TH AND 14th AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES; DECLARATION OF JASON SARRIS; DECLARATION OF LEAH DEANGELO; DECLARATION OF CARRIE HEALON; DECLARATION OF ZACH BOULWARE; DECLARATION OF FLOJAUNE COFER, PhD; DECLARATION OF ANTHONY D. PRINCE; [Proposed ORDER]** |

## INTRODUCTION AND BACKGROUND

1.     On June 7, 2021, the City of Novato, California enacted amendments to its

Municipal Code prohibiting daytime camping and imposing other restrictions regarding what the

1    City terms "critical infrastructure" and its "Stream Protection Zones." The amended code sections

2    expressly provide that violators will be charged with criminal misdemeanors. Although "neutrally"

3    framed, it is clear that these measures are in fact aimed at the city's unhoused in general and in

4    particular, approximately 30 unsheltered persons who have created "Camp Compassion" in a

5    section of Lee Gerner Park.

6          2.        The amended code sections permit overnight camping on public property but only in

7    those areas not determined by a resolution of City Council to be "critical infrastructure" and provide

8    for misdemeanor criminal charges against violators.  However, the definition provided for "critical

9    infrastructure" is so vague and over broad that that virtually any and every public space in the City

10   of Novato can be and likely will be so designated and thereby off-limits to the unhoused.

11

12         3.        While Code Section 14-20.7 permits overnight camping from 9:00 pm until 7:00 am,

13   it does so only if a person is not "engaging in camping as a voluntary act", which is defined as

14   camping during such time as there are "no beds in any shelter or other accommodation" accessible

15   from the location where a person is camping. The is no definition of "shelter" or "accommodation,"

16   no requirement that the alternative lodging be indoors and constitutionally compliant, as expressly

17   provided under *Martin v. Boise*.

18

19         4.        The City also disregards the command of *Martin v. Boise* regarding the

20   determination of whether or not sufficient alternative shelter is available such that a challenged

21   ordinance is enforceable. That test is not whether a bed is available in any given shelter but whether

22   "there is a greater number of homeless individuals in *a jurisdiction* than the number of available

23   beds [in shelters]." *Martin v. City of Boise*, 920 F.3d 584, 617 (2019) (Emphasis added.) If so, the

24   Court ruled that "the jurisdiction cannot prosecute homeless individuals for involuntarily sitting,

25   lying and sleeping in public." *Martin v. City of Boise,* 920 F.3d 584, 617 (2019) quoting Jones v.

26   City of Los Angeles, 444 F.3d 1118, 1138 (9th Cir. 2006.) At this time there is not a single available

27   shelter bed in either the City of Novato or Marin County, yet violations of the municipal code

28

*Complaint for Injunctive Relief*

sections challenged herein are punishable with misdemeanor criminal charges. (See Declaration of Jason Sarris.)

5.      In addition, should Defendant City of Novato begin enforcement of the challenged ordinances, it will be increasing the risk of harm by way of separation of Plaintiffs from vital services and the natural shade from extreme summer temperatures now available in 'Camp Compassion';  exposure to infection from the surging Delta variant of the COVID-19 virus, exacerbation of existing physical disabilities, great bodily harm and possible death as Plaintiffs are forced to constantly walk the streets, made to carry or leave behind vital survival items or hide in dangerous locations where there is no relief from the elements.

6.      Accordingly, individual plaintiffs,  homeless Camp Compassion residents **Jason Sarris, Carrie Healon, Zach Boulware, Lea Deangelo, Donald Hobbs, Lisa Johnson, Bethany Allen,** on behalf of themselves and other similarly situated persons and organizational plaintiff, **Marin County Local of the California Homeless Union** ("Plaintiffs")  bring this emergency action for a temporary restraining order and preliminary injunction against the **City of Novato**, and in their individual and official capacities, respectively, Novato City Manager **Adam McGill**, Director of Public Works **Christopher Blunk,** Chief of Police **Matthew McCaffrey**, Mayor **Pat Eklund**, and **DOES** 1-100 to enjoin Defendants from enforcing Novato Municipal Code Sections 7-11, 7-12, 14-20,5, 14-20.7 and any other Code Sections that either have the purpose or the effect of criminalizing the homeless based on their status.

## MEMORANDUM OF POINTS AND AUTHORITIES

### The Challenged Code Sections

7.      On June 8, 2021, the Novato City Council approved Ordinance Nos. 1669 and 1670, adding the language therein to Novato Municipal Code Sections 7-11 and 7-12, respectively. When the legislation was originally proposed on May 25th, 2021, Plaintiff Jason Sarris,  a resident of Camp Compassion and President of the Novato Union of the Homeless, along with other Union

*Complaint for Injunctive Relief*

officers, addressed City Council objecting that as drafted, the Ordinances were vague, overbroad, ambiguous and if enacted and enforced would lead to serious physical harm to those swept up in its facially unconstitutional proscriptions, including, but not limited to the City's unhoused. Plaintiff Sarris warned the City Council that if approved, the Union would challenge the subject ordinances to legal challenge.

Page - 4 -

8.      Also voicing opposition at the May 21, 2021 City Council meeting were attorneys from the Legal Aid Society of Marin County, Leah Deangelo, a resident of Camp Compassion and Robbie Powelson, President of the Sausalito/Marin County Chapter of the California Homeless Union.

9.      Section 7-11.3(a) has now been amended to read as follows:

It is unlawful and a public nuisance for any person including persons who would otherwise be entitled to cap on public property pursuant to Section 14-20.8, to camp, occupy camp facilities, or use camp paraphernalia at the following locations:

1.   Critical infrastructure
2.   Within 50 feet of critical infrastructure
3.   Within 50 feet of a vehicular or pedestrian entrance or exit from of [sic] critical infrastructure
4.   On those portions of aa right-of-way that are required by local, state or federal law to be free of obstruction to first responders, including but not limited to members of law-enforcement, fire-prevention, or emergency medical-services agencies
5.   Wildlfire risk areas
6.   Youth-serving facilities
7.   Within 50 feet of youth-serving facilities

10.      "Critical infrastructure" for which no definition was provided in the prior version of Code Section 7-11, is now defined as:

"[A]ny real property or facility, whether privately or publicly owned, as designated by the City Council by resolution, the City Council determines in its discretion is so vital and integral to the operation or functioning of the city that its damage, incapacity, or disruption, or destruction would have a debilitating impact on the public health, safety, or welfare.

Critical infrastructure may include, but is not limited to, government buildings, such as schools, fire stations, police stations, jails or courthouses; hospitals, antennas, bridges, roads, train tracks, drainage systems, or levees; or systems, such as

*Complaint for Injunctive Relief*

computer networks, public utilities, electrical wires, natural gas pipes, telecommunication centers, or water sources"

(Novato Municipal Code Section 7-11.2)

11.    Regarding abatement of violations of the ban on camping on or near "critical infrastructure," Section 7-11.4 ("Abatement") reads as follows:

"7-11.4 any violation of section 7-11 an/or 7-12 may be abated by the city upon 24 hours of prior notice; but a violation of 7-11 and/or 7-12 may be abated immediately by the city without prior notice, if the violation poses an imminent threat to public health or safety… The cost of abatement, including all administrative of costs of any action taken hereunder, may be assessed against the subject premises as a lien, made a personal obligation of the owner, or both, in accordance with procedures in section 1-6 of this code. No person shall willfully prevent delay, resist, obstruct, or otherwise interfere with a city official, employee, contractor or agent in their execution of an abatement pursuant to this section"

12.    The challenged revisions are fatally unconstitutional, given the lack of precise definitions, the overbreadth, vagueness and ambiguity of terms such as "interference," "vital and integral to the operation of the City," "damage, or incapacity, or disruption, or destruction," "would have a debilitating impact on the public health, safety, or welfare" that it would be almost impossible for a person to determine where he or she is allowed to camp and where they are prohibited from doing so. Although "neutrally worded" it is manifest that the amended code sections challenged herein will lead to selective enforcement against the unhoused.

13.    For example, electrical wires cover essentially the entire urban core of the city, as do the subterranean gas pipelines and other concealed components of "critical infrastructure." In the parcels that do not possess these, in the rural areas or by the creek where Camp Compassion is located, the City's action in enabling itself to designate a location as a "Wildfire Risk Area" is highly problematic, given that vast portions of the entire region and the State of California are now designated as such. (The permanent displacement and exile of persons from such areas, even if imminently facing an actual fire, is not something that either Marin County or the State of California has considered or is now contemplating.)

*Complaint for Injunctive Relief*

14.     Another example of the failure of the amended code sections to put a would-be violator on notice as to what is and is not permitted is the use of the disjunctive "or" to separate the terms "damage," "incapacity," "disruption" and "destruction" of alleged items of critical infrastructure. If something is "damaged" but not such that it causes "incapacity" or "disruption,"-- i.e, the "damaged" item continues to function -- does the act that allegedly caused the damage actually have a "debilitating impact on public health and safety." Is the road to be closed because it has a pothole? Should the school be shut down because it has a broken window?

Page - 6 -

15.     Indeed, the overbreadth and vagueness of the enactments opens the door to creating increased risks to plaintiffs exiled to the streets. A prohibition on camping near "electrical wires" could mean being forced to camp away from lamp posts and other and well-lit areas, which are a critical deterrent to crime, according to the U.S. Department of Justice's own study, *Improving Street Lighting to Reduce Crime in Residential Areas.* https://cops.usdoj.gov. Given that the homeless are already disproportionately victims of street crime, Plaintiffs herein will be subject to this heightened and foreseeable risk of harm if the City is permitted to enforce 7-11.

16.     Furthermore, with regard to safety, during fire season, when CDC guidance recommends staying in enclosed areas, would make the daytime camping ban physically dangerous. Looking onto the Wild Fire Risk Areas, as well Ordinance 1670 that bans encampments with 50 feet of creeks and streams, the ordinance would put people in jeopardy on exceptionally hot days when CDC guidance points to the need for shade, which is generally always present where streams and creeks flow. Moreover, the evaporative cooling that riparian and other wooded habitats provide would no longer be available.

17.     Thus, the City - without actually describing what the public benefit is - actually puts campers into physical danger and disregards the authoritative guidance of the Center for Disease Control and, by enacting the challenged code revisions, the City not only seeks the destruction of Camp Compassion but has targeted the entire homelessness population of Novato by broadly

*Complaint for Injunctive Relief*

1   prohibiting sleeping, camping, and "storage" of personal property in any and all parts of the City

2   designated by the City Council as "critical infrastructure."

3       18.    Plaintiffs have done their due diligence in putting Defendants on notice of their

4   concerns but have been ignored. Prior to enacting the challenged revisions, Defendants ignored

5   detailed public comment during online City Council Meetings by Homeless Union officers and

6   members, including Plaintiff Jason Sarris, as well as a written statement from the National

7
    Homeless Law Center. In addition, Defendants refused to come to the camp or meet with campers.
8
9   Jason Sarris, who has stated on many occasions that he wants to have a place where people can

10  camp and be safe, is actually a member of Marin County's Homeless Planning Steering Committee

11  (lived in seat) as well as a member of the County's Housing Stakeholders Committee. Yet, he has

12  been totally ignored by the Defendant City of Novato. The only official who responded at all was

13
    Novato Mayor Pro-Tem Eric Lucan, who met with Plaintiff Sarris the day prior to the unanimous
14
15  passage of the ordinance. However, came only to inform Mr. Sarris that the proposed ordinances

16  would be approved and the homeless would not be happy about it. See, Declaration of Jason Sarris).

17      19.    City Manager, Adam McGill, continues to refuse to meet with Jason Sarris and other

18  camp leaders and has ignored repeated communications from Camp Compassion residents.

19                          **JURISDICTION AND VENUE**

20      20.    This is an action for injunctive relief pursuant to 42 USC Section 1983 and F.R. Civ.

21  P. 23(b)(2) based upon ongoing violations violations and imminent harm to persons living at Camp

22  Compassion and in the City of Novato Guaranteed by the First, Fourth, and Fourteenth

23
    Amendments of The Constitution of the United States of America and Pandemic related health care
24
25  orders of the State of California, Marin County, and Novato itself.

26      21.    Jurisdiction exists because 28 USC Section 1331 and 1343 in that this case is

27  brought pursuant to 42 U.S.C. Section 1983 and raises questions of federal Constitutional Law

28  under the first, fourth, and fourteenth amendment.

*Complaint for Injunctive Relief*

**PARTIES**

**Plaintiffs**

22.    Plaintiff **Marin County Homeless Union** is a local union chapter of the California Homeless Union, an unincorporated membership association which organizes, advocates for and represents unhoused and marginally housed persons. Clearing "Camp Compassion" and other encampments results in dispersal of and harm to Union members and directly interferes with the Union's mission.

23.    Plaintiff **Camp Compassion** is a Homeless Union-affiliated encampment of otherwise unhoused persons in Lee Gerner Park, which manages donations of food, blankets, tents, water, caregiving, and other necessities to its members. Camp Compassion also holds a weekly booth at the Novato Farmer's Market where members can sell arts and crafts and educate the public about homelessness.

24.    Plaintiff **Jason Sarris** is a 57-year-old man who is experiencing homelessness. Jason Sarris is a Homeless Union officer who has taken an active leadership role in the camp and a announced candidate for County Supervisor District 5. He is registered to vote at Lee Gerner Park, in District 1 of Novato's City Council voting districts. Jason is a skin cancer survivor who continues to suffer from a serious chronic skin condition called x-linked ichthyosis, and an acute back injury. At Camp Compassion he manages these conditions, makes sures campers have tents, blankets, food, and water, as well as works on voter registration and voter education efforts in advance of the 2022 supervisor election.

25.    Plaintiff **Lea Deangelo** is 61 years old, and a transgender woman (male to female). For the past 10 years, she has been transitioning from male to female who suffers from a number of physical disabilities. Because of her gender, she has been discriminated against and on the streets been threatened and attacked but finds a level of security at Camp Compassion with proximity to a

1  few trusted friends. She moved to Camp Compassion after Officers Alan Bates, Officer Wax,

2  Officer Mueller impounded her vehicle.

3      26.    Plaintiff **Carrie Healon** is a 42-year-old woman who lives at Camp Compassion

4  with her fiancée Plaintiff Zach Boulware. Ms. Healon is a life-long resident of Novato who suffers

5  from severe osteoarthritis that has caused her to have large visible bone spurs on top of her feet that

6  seriously impedes her mobility. She also suffers from a diagnosed overactive thyroid disorder which

7
   causes her to faint and puts her at risk for heat stress and heat stroke who is now protected from
8
9  such exposure in the naturally shaded Camp Compassion.

10     27.    Plaintiff **Zach Boulware** is a 42-year-old man who lives at Camp Compassion and is

11 the fiancée and caregiver of Carrie Healon, also a named plaintiff. Mr. Boulware suffers from

12 juvenile rheumatoid arthritis which causes him chronic pain and mobility issues. He also suffers

13 from a pinched median nerve in his upper back and shoulder which was the result of a workplace
14
   accident that at times causes him to lose feeling and dexterity in his hands, arms, and shoulders. If
15
16 he is evicted from Camp Compassion, there will be no shelter available to him and his disabilities

17 will be greatly exacerbated if he is forced into the streets.

18     28.    Plaintiff **Donald Hobbs** is a 65-year-old resident of Camp Compassion. Mr. Hobbs

19 recently became displaced from his longtime home in Novato, where he has been working in

20 construction for 35 years. He is also a former NFL player who played for the Miami Dolphins and

21 Oakland Raiders. Donald suffers from chronic pain and traumatic brain injury in large part because
22
   of injuries he sustained in the NFL.
23
24     29.    Plaintiff **Lisa Nicole Johnson** is a 33-year-old woman who came to Camp

25 Compassion after being displaced by a traumatic event. She came with nothing, and was provided

26 by the camp with a sleeping bag, tent, food, water, friendship and protection.

27

28

*Complaint for Injunctive Relief*

**Defendants**

30.    Defendant **City of Novato** ("City") is a municipal corporation within Marin County,

existing under the laws of the State of California with capacity to sue and be sued.

Page
- 10 -

31.    Defendant **Adam McGill** is City Manager of Novato

32.    Defendant **Pat Eklund** is the Mayor of Novato.

33.    Defendant **Susan Wernick** is a City Council Member of Novato, District 1, and is

the elected representative of all members in Camp Compassion who are domiciled in District 1.

34.    Defendant **Chris Blunk** is director of the Department of Public Works one of the

departments charged with implementing and enforcement of the challenged ordinances.

35.    Defendant **Mathew McCaffrey** is Chief of Police of the Novato Police Department

charged with implementing and enforcing the challenged ordinance.

### MEMORANDUM OF POINTS AND AUTHORITIES

36.    Pursuant to Local Rule 65.1(a), plaintiffs respectfully move for a temporary

restraining order against Defendants and each of them to halt the expulsion of homeless persons

from Camp Compassion where approximately 30 people have been camping for over a year.

Specifically, Plaintiffs seek a Temporary Restraining Order and Preliminary Injunction against

enforcement, now or at any time after achievement of the City's declared conditions precedent to

enforcement, of Novato Municipal Code Sections 7-11 (Resolution 1669), 7-12 (Resolution 1670)

and 1420.7,  and thereby prevent Defendants from removing plaintiffs from Camp Compassion and

other homeless encampments and essentially prohibiting them from camping anywhere in the City

of Sausalito legitimately or illegitimately designated as "critical infrastructure" under the Code's

overbroad and vague definitions.

37.    A TRO is necessary to prevent irreparable harm to homeless plaintiffs prior to this

Court having the opportunity to make a decision on Plaintiffs' motion for preliminary injunction.

*Complaint for Injunctive Relief*

38.     On July 6, 2021, officials of the City of Novato went to Camp Compassion and distribute handbills with excerpts from the new code sections. Although the new restrictions did on that day take effect, the Notices failed to state that they would not be enforced unless and until one of the two "conditions precedent" recited in the Code Sections themselves, occurred. This caused great consternation that eviction was imminent.

39.     Accordingly, the next day, July 7, 2021, counsel for Plaintiffs sent, via email, a Cease and Desist Letter including notice that whether or not the pertinent code sections were enforced, Plaintiffs intended to file an Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction to City Manager Adam McGill and City Attorney Jeffrey A. Walter. (A true and correct copy of the City's handbill and Plaintiffs Cease and Desist Letter are attached to the Declaration of Anthony D. Prince). As of this filing, neither the City Manager nor the City Attorney have responded. Plaintiffs therefore respectfully request that the Court grant its application for a TRO.

### STANDARD OF REVIEW

40.     In considering an application for a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, courts in the Ninth Circuit look to the following factors: a) The movant has shown a likelihood of success on the merits; b) There is a likelihood that the movant will suffer irreparable harm in absence of a preliminary injunction; c) The balance of equities tips in the movant's favor; d) The injunction is in the public interest. *Stormance, Inc. v. Selecky,* 586 F.3d 1109, 1127 (9th Cir. 2009). Also see *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir, 2015) quoting from *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118,1124 (9th Cir.2014)

41.     Under the sliding-scale approach adopted by the Ninth Circuit in A*lliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,  Courts must weigh these factors using a "sliding scale" approach such that where there are "serious questions going to the merits" a preliminary injunction may still be issued so long as "the balance of hardships tips sharply in the plaintiff's favor and the

*Complaint for Injunctive Relief*

Page
- 11 -

1    other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Alliance*

2    *for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011.) To determine whether to issue

3    a TRO, the courts in the Ninth Circuit apply the same analysis used to evaluate a motion for

4    preliminary injunction. *McCarthy v. Servis One, Inc.* 2017 U.S. Dist. LEXIS 32622, at 9-10(N.D.

5    Cal. Mar. 7. 2017)

6        42.    Here, Plaintiffs *Ex Parte* Application for Injunctive Relief raises serious questions

7    including the legality, under the Federal and California State Constitutions of Defendants' plan to

8

9    expel the homeless from Camp Compassion at Lee Gerner Park when its undisputed that there are

10   no shelter beds in the City of Novato.

11                              **State-Created Danger**

12       43.    In addition, serious questions arise regarding **state-created danger by way of**

13   **increasing the risk of harm and even death face routinely by homeless persons** deprived of the

14

15   relative safety of the encampment community and the material support rendered by charitable

16   organizations and individuals.

17       44.    While most courts have held  that there may be no fundamental right to housing, the

18   Ninth Circuit recognizes liability under substantive due process where a state or local official act to

19   place a person in a situation of known danger with deliberate indifference to their personal or

20   physical safety. *Kennedy v. City of Ridgefield,* 439 E 3d 1055(9th Cir. 2006) "[D]eliberate

21   indifference is a stringent standard of fault, requiring proof that a municipal actor disregard a known

22   or obvious consequence" *Board of County Com'rs of Bryan County, Okl v Brown,* 520 U.S. 397

23

24       45.    "In examining whether [the city] affirmatively places an individual in danger, a court

25   does not look solely to the agency of the individual, nor does it rest its opinion on what options may

26   or may not have been available to the individual. Instead, [the court must] examine whether [the

27   city] left the person in a situation that was more dangerous than the one in which they found him"

28   *Kennedy,* 439 F.3d at 1062 (citations omitted) See also, Northern District Judge Susan van Keulen's

*Complaint for Injunctive Relief*

Order January 20, 2021 granting plaintiffs' Ex Parte Application for Preliminary Injunction in the case of *Santa Cruz Homeless Union et al v. [Santa Cruz City Manager] Martin Bernal, City of Santa Cruz, et al Case No. 20-cv-09425-SVK.*

46.    Here, where it is undisputed that there are no shelters or individual housing options available; where the "option" provided to Camp Compassion and homeless in Novato is to wander the streets during the day, lose access to community donations. The ordinance does not say where people can sleep, only an over broad prohibition on most places.

47.    While California is loosening COVID-19 restrictions, guidance provided the federal Centers for Disease Control (CDC) and repeatedly affirmed since fist issued remains the same: "If individual housing options are not available, allow people who are living unsheltered or in encampments to remain where they are. Clearing encampments can cause people to disperse throughout the community and break connections with service providers. This increases the potential for infectious disease spread." (See, Declaration of Flojaune Cofer, PhD, MPH).

48.    In *Marin County Homeless Union v. City of Sausalito*, Case No. 3:21-cv-01143-EMC, Judge Edward Chen enjoined the city from clearing a small homeless encampment in the City's Dunphy Park and from enforcement of a broad ordinance essentially prohibiting camping city wide. He only recently modified the injunction to allow the City of Sausalito to move the camp to a separate and comparable campground with hygiene facilities while still enjoining the City of Sausalito from enforcing its daytime camping ban.

49.    In his modification of the injunction, Judge Chen permitted the moving of the encampment only because campers were to be moved, with their personal possessions, to a similar location with bathrooms and showers, and that only after conducting an evidentiary hearing to satisfy himself that the new location was free of serious health and safety hazards. "The Courts Ruling here is dependent on the City fulfilling all other conditions and safeguards described above. In addition, the Court's ruling here has no impact on the other part of the preliminary injunction

*Complaint for Injunctive Relief*

1  related to day camping. That is, the Court continues to enjoin the day camping prohibition" *Marin*

2  *County Homeless Union v. City of Sausalito*, Case No. 3:21-cv-01143-EMC.

3      50.    The same is true in *Santa Cruz Homeless Union et al. vs Bernal et al,* Case No. 5:20-

Page
- 14 -

4  cv-09425, where Judge Susan Van Keulen only granted modification of the injunction when

5  Defendant City of Santa Cruz agreed to move the entire original encampment at the upper portion

6  of San Lorenzo Park to an area only yards away, after the City had conferred with the Santa Cruz

7
   Homeless Union.

8

9      51.    The City of Novato has no such commitment to a safe move to a comparable site –

10 and is actively opposed to doing so. Their only solution dispersion and criminalization of indigent

11 homeless persons within the city. All of the recent cases in the Northern District, share a common

12 thread: the Courts have ruled that if an encampment is to be cleared, it is to be moved intact and in

13 its entirety to a location with comparable amenities and Cities are still enjoined from enforcing

14
   broader city-wide camping bans.

15

16     52.    In addition to ongoing concerns regarding COVID-19, including, most urgently and

17 recently the rapid spread of the highly contagious Delta variant, this complaint raises other public

18 health issues are raised about other imminent public health dangers of the ordinance. The amended

19 code sections, if enforced, will lead to homeless people having life sustaining survival items such as

20 food, blankets, shoes, medication, essential documents be taken with little to no warning and

21 disposed of (Ordinance No. 1668 7-11.4.d). Homeless persons will then be charged fines for the

22 cost of the "abatement" and liens set on their property.  (Ordinance No. 1668 7-11.4.d).

23
       53.    This, on its face, could lead injury and death to medically vulnerable people

24 experiencing homelessness who will be at great risk of having life sustaining survival items and

25 medication. Loss of blankets and tents could lead to severe unmitigated exposure to the elements

26 (See, Declaration of Flojaune Cofer, PhD, MPH)

27

28

*Complaint for Injunctive Relief*

54.     The challenged code sections are indifferent to the environmental realities of living outside as the widely predicted brutal summer has arrived. The Bay Area is in the midst of a summer heatwave and in the midst of fire season. To avoid injury and death, CDC guidance during heatwaves and fire events with smoke dispersal instruct people to stay inside and reduce strenuous activity. (See Cofer Declaration) The City will be putting people into harm's way by forcing campers to move around during the day and break camp during the day.

55.     The vague definition of "fire hazard areas" also means people will be displaced from sheltering in place where there is shade even if they don't possess any kind of flame source. Especially among medically vulnerable people who are unhoused, the ordinance flies in the face of public health to create the possibility of irreparable harm or death through unmitigated exposure to smoke and high heat. Campers who keep camp during the day in shaded areas – following CDC guidance for such events – will risk arrest and destructions of their domiciles, food, water, and other life-sustaining survival items.

**Triggering Enforcement: Timeliness of Plaintiffs' Request for Injunctive Relief**

56.     The challenged code sections contain a subsection entitled "Enforcement" which provides that they may be enforced when the sooner of two events take place: either the CDC rescinds its guidance regarding leaving homeless encampments undisturbed or Marin County achieves a COVID-19 fully-vaccinated rate of 90%. However, while citing to the CDC guidelines, the City then disregards the CDC's warning regarding protections for the unhoused, specifically advising "community vaccination coverage should not be used alone to decide to modify approaches to prevention among people experiencing unsheltered homelessness." (See Declaration of Flojaune Cofer, PhD, MPH)

57.     The same CDC statement of June 7, 2021 also states:

Closing encampments can lead people to disperse and result in increased crowding at other encampments or in shelters, which can increase the risk of

*Complaint for Injunctive Relief*

Page - 15 -

spreading infectious disease, including COVID-19. *Encampment disbursement should only be conducted as part of a plan to **rehouse people living in encampments**, developed in coordination with local homeless service providers and public health partners. (Emphasis added.) See Cofer Declaration*

Page - 16 -

58.    It is manifest, therefore, that if not restrained, once enforcement is triggered, the City will be inflicting irreparable harm in the form of increasing the risk of great bodily harm and even death among the homeless population. The challenged code revisions give the City carte balance to label virtually the entirety of Novato to be "critical infrastructure", off limits to homeless who need to camp both day and night and suffer the myriad harms described in detail in the Declarations filed in support of Plaintiffs' application.

### Balance of Equities and Public Interest

59.    Only days ago, in his order enjoining an anti-camping ordinance very similar to the one at issue here, Chief Judge Morrison England of the Eastern District cited to *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014), *Preminger v. Principi*, 422 F.3d 815 (9th Cir. 2005) and *UFW v. U.S. DOL*, No. 1:20-cv-1690. "When the government is a party to a case where a preliminary injunction is sought, the balance of equities and public interest factors merge." Judge England continued, "Generally, public interest concerns are implicated when a constitutional right has been violated because all citizens have a stake in upholding the constitution." (*Warren v. City* of Chico, No. 2:21-cv-00640-MCE-DMC)

60.    Here, the public interest—which includes the interests of the homeless, who, it is often forgotten, are also members of the public—is clearly served by enjoining enforcement of the City of Novato's facially unconstitutional code revisions and the increased dangers they will create.

*Complaint for Injunctive Relief*

**Even if the Court Should Not Find State-Created Danger, the Ninth Circuit's ruling in Martin v. Boise, Alone, Prohibits Enforcement of Novato's Anti-Camping Ordinances**

61.    In the above-cited ongoing case of *Warren v. City of Chico*, Chief Judge England also cited to the Ninth Circuit's historic decision in *Martin Vs City of Boise*, 902 F. 3d 1031, 1046 (9 Cir. 2018): "Because the ordinances passed by the [Chico] City Council subject individuals to criminal penalties for 'living outdoors' anywhere in the City, the result is that homeless individuals are subject to criminal prosecution no matter where they go within the jurisdiction." England continues: "This Circuit has previously held that ordinances such as this are unenforceable, unless there is practically available shelter within the City for all unhoused individuals. 'So long as there is a greater number of homeless in a jurisdiction than the number of available beds [in shelters] the jurisdiction cannot prosecute homeless individuals for "involuntarily sitting, lying, and sleeping in public." (Quoting *Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9ᵗʰ Cir. 2006)

62.    Here, the City of Novato attempts to avoid *Martin's* command by driving a Mack Truck and a bulldozer through that part of Martin v. Boise which provides that municipalities are not prohibited from imposing restrictions for particular purposes and in particular areas of the City. But the challenged code provisions in this case, enabling Defendant to declare virtually the entire city to be "critical infrastructure" under an outrageously overbroad and vague "standard" is a case of the "exception" swallowing the rule, subverting the essential holding of Martin at the expense of and with great risk to the unhoused.

## FIRST CAUSE OF ACTION

### Cruel and Unusual Punishment; Excessive Fines (Eighth Amendment to the U.S. Constitution; 42 U.S.C. §1983; Art. 7) 173.

63.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein. The acts and omissions of Defendants, as described herein, violate the

*Complaint for Injunctive Relief*

constitutional rights of Plaintiffs to be free from actual or threatened cruel and unusual punishment and excessive fines.

64.    By virtue of their status as homeless people, and due to the insufficiency of shelter or housing in the City of Novato, the Plaintiffs have no way to comply with the laws Defendant enacted and continues to enforce against them. The City of Novato has a policy and practice of forcibly removing Plaintiffs who are involuntarily sleeping overnight from public property, including all parks, waterways, and city-owned properties which it has now codified in the amended Municipal Code Sections challenged herein. This has the effect of a citywide ban that does not allow for Plaintiffs to maintain life-sustaining activities that are the unavoidable consequence of being without housing.

65.    Defendants have a custom, policy, and/or practice of encouraging its officers to threaten and to cite or arrest homeless people for sleeping or having property in public, which is unavoidable behavior due to their unhoused status. There is an actual controversy between Plaintiffs and the City of Novato concerning the continued threat of citation and arrest if Plaintiffs remain on public property, in parks, waterways, and other city-owned properties. The City will continue enforcement throughout the city and has a history of issuing citations and making arrests in other areas of the city. Plaintiffs desire a judicial determination of their rights and duties and a declaration as to Defendant's constitutional obligations.

## SECOND CAUSE OF ACTION

### Cruel and Unusual Punishment (Art. 7, §17 California Constitution)

66.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein. The acts and omissions of Defendants, as described herein, violate the constitutional rights of Plaintiffs to be free from actual or threatened cruel and unusual punishment and excessive fines. By virtue of their status as homeless people, and due to the insufficiency of

*Complaint for Injunctive Relief*

shelter or housing in the City of Novato, Plaintiffs have no way to comply with the laws Defendant enacted and continues to enforce against them.

67.     The City of Novato has a policy and practice of forcibly removing Plaintiffs who are involuntarily sleeping overnight from public property, including all parks, waterways, and city-owned properties. This has the effect of a citywide ban that does not allow for Plaintiffs to maintain life-sustaining activities that are the unavoidable consequence of being without housing. Defendant has a custom, policy, and/or practice of encouraging its officers to threaten and to cite or arrest homeless people for sleeping or having property in public, which is unavoidable behavior due to their unhoused status.

68.     There is an actual controversy between Plaintiffs and the City of Chico concerning the continued threat of citation and arrest if Plaintiffs remain on public property, in parks, waterways, and other city-owned properties. The City has made clear that it will continue enforcement throughout the city and has a history of issuing citations and making arrests in other areas of the City. Plaintiffs desire a judicial determination of their rights and duties and a declaration as to Defendant's constitutional obligations.

### **THIRD CAUSE OF ACTION**

**Right to Due Process of Law: State-Created Danger (Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

69.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

70.     The City of Novato has a policy and practice of forcibly removing Plaintiffs from encampments in disregard of CDC guidelines pertaining to exposure to COVID-19 as well as heat-related dangers that will be greatly exacerbated if Defendants are permitted to enforce the revised sections of the Novato Municipal Code challenged herein. Plaintiffs will be placed in immediate

danger to their health and safety by exposing them to the elements, depriving them of their rights to substantive due process guaranteed by the 14th Amendment to the U.S. Constitution.

## FOURTH CAUSE OF ACTION

**Right to Due Process of Law: State-Created Danger (Article I, Section 7 of the California Constitution) 186.**

71.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

72.    The City of Novato has a policy and practice of forcibly removing Plaintiffs from encampments in disregard of CDC guidelines pertaining to exposure to COVID-19 as well as heat-related dangers that will be greatly exacerbated if Defendants are permitted to enforce the revised sections of the Novato Municipal Code challenged herein. Plaintiffs will be placed in immediate danger to their health and safety by exposing them to the elements, depriving them of their rights to substantive due process guaranteed by Article 1, section 7 of the California Constitution.

## FIFTH CAUSE OF ACTION

**Unlawful Seizure of Property (Fourth and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

73.    Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

74.    The provisions of the challenged revisions to the Novato Municipal Code will permit Defendants to permanently seize, and in some cases, destroy with no genuine opportunity for retrieval, any personal property belonging to Plaintiffs and other unhoused, unsheltered persons. On its face, and if enforced, the enacted prohibitions, policy and procedures regarding camping unreasonable seizures that violate the 4th and 14th Amendments of the United States Constitution.

## SIXTH CAUSE OF ACTION

**Right to Due Process of Law (Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983)**

*Complaint for Injunctive Relief*

Page - 20 -

75.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

76.     The City of Novato's Anti-Camping Ordinances and, in particular, the overbreadth, vagueness and ambiguity of terms including, but not limited to "critical infrastructure" "damage," "incapacity," "disruption," "destruction," "impede" "vital function" "youth-serving" "involuntary camping" and "voluntary camping" etc. in the challenged Code Sections create vague and uncertain requirements that are a denial of due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution, because they fail to inform Plaintiffs and other members of the public as to what acts and conduct will subject them to criminal penalties and what forms of what acts and conduct will not.

**SEVENTH CAUSE OF ACTION**

**Right to Due Process of Law (Article I, Section 7 of the California Constitution)**

77.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

78.     The City of Novato's Anti-Camping Ordinances and, in particular, the overbreadth, vagueness and ambiguity of terms including, but not limited to "critical infrastructure" "damage," "incapacity," "disruption," "destruction," "impede" "vital function" "youth-related" in the challenged Code Sections create vague and uncertain requirements that are a denial of due process of law, as guaranteed by the Article I, Section 7 of the California State Constitution, because they fail to inform Plaintiffs and other members of the public as to what acts and conduct will subject them to criminal penalties and what forms of what acts and conduct will not.

**EIGHTH CAUSE OF ACTION**

**Violation of California Civil Code § 52.1 195.**

79.     Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

*Complaint for Injunctive Relief*

80.    The Defendant's conduct, as described herein, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise and enjoyment of Plaintiffs' rights as secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution or laws of the United States, and of the rights secured by the Constitution or laws of the State of California.

Page - 22 -

81.    Defendant has enacted revisions to its municipal code which on their face and if enforced will subject Plaintiffs to arrest and prosecution for violation of misdemeanors punishable by incarceration and excessive fines under ordinances unconstitutional on their face and as applied. If forced to comply, Plaintiffs face coercive and intimidating tactics to forcibly remove Plaintiffs, present them with obviously dangerous restrictions for involuntarily sleeping outdoors, and by essentially banning daytime camping and severely restricting overnight camping in every inch of the City, ultimately push them out of Defendant's jurisdiction.

82.    Plaintiffs are entitled to an injunction pursuant to California Civil Code §52.1.

### JURY DEMANDED

### PRAYER FOR RELIEF

83.    Plaintiffs respectfully request that this Court order the following:

(a) Grant a temporary Restraining Order, Preliminary Injunction or Permanent Injunction immediately enjoining Defendants and each of them from closing Camp Compassion at Lee Gerner Park or otherwise removing and subjecting unhoused people to Novato Municipal Code Sections 7-11, 14-20.5, 14-20.7 and any other portion of the Novato Municipal Code which is intended to or will have the effect of removing persons from Camp Compassion unless and until each person/family so removed is actually provided- in real-time – with safe, indoor individual housing, consistent with CDC guidance and Ninth Circuit's decision in Martin v. Boise;

*Complaint for Injunctive Relief*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(b) Grant a temporary restraining order, preliminary injunction or permanent injunction immediately enjoining Defendants and each of them from enforcing Sections 7-11, 7-12, 14-20.5, 14-20.7 and all other sections of the revised Novato Municipal Code that have the stated purpose of or will result in the criminalization of the homeless in violation of their above-cited state and federal rights and statutory protections and under the ruling of the Ninth Circuit Court of Appeals in *Martin v. Boise*;

(c) Order Defendants to strictly observe COVID-19, heat-related and other federal CDC, California Department of Health and Marin County Public Health guidance and orders regarding homeless encampments;

(d) That this Court retain jurisdiction in this matter;

(e) That the Court award reasonable attorney's fees to Plaintiffs' counsel;

(f) Award any further relief the Court deems appropriate.

Dated: July 13, 2021                                 Respectfully Submitted

Anthony D. Prince
General Counsel,
California Homeless Union
Attorney for Plaintiffs

**VERIFICATION**

I, Jason Sarris, in my official capacity as an officer of the Marin County Homeless Union declare the following:

The facts alleged in this *Ex Parte* Application are true of my own knowledge except as to those made upon information and belief and, as to such statements, I believe them to be true.

Sworn under penalty of perjury under the laws of the United States of America.

Dated: July 13, 2021                                 /s/ Jason Sarris

Camp Compassion, Novato, California

Page - 23 -

*Complaint for Injunctive Relief*

1  Anthony D. Prince (SBN # 202892)
   General Counsel, California Homeless Union/Statewide Organizing Council
2  Law Offices of Anthony D. Prince
   2425 Prince Street, Ste. 100
3  Berkeley, CA 94705
   Tel: 510-301-1472
4  E-mail: princelawoffices@yahoo.com

5

6  Attorneys for Plaintiffs

Page
- 1 -

### UNITED STATES COURT

7

### NORTHERN DISTRICT OF CALIFORNIA

8

9  MARIN COUNTY CHAPTER OF THE )
   CALIFORNIA HOMELESS UNION on )   **Case No.:**
10 behalf of itself and those it represents; JASON )
   SARRIS; LEA DEANGELO; ZACH )   **DECLARATION OF ANTHONY D.**
11 BOULWARE; CARRIE HEALON; LISA )   **PRINCE IN SUPPORT OF PLAINTIFFS'**
   NICOLE JOHNSON; DONALD HOBBS; )   **COMPLAINT FOR INJUNCTIVE**
12 DEBORAH ANN MIRAMONTES; )   **RELIEF PURSUANT TO 42 U.S.C. § 1983**
   CHARLES TALBOT, BETHANY ALLEN, )
13 MICHELANGELO MONTEZ; KALANI )
   WELCH, and other similarly situated )
14 homeless persons including current residents )
   of "Camp Compassion" homeless )
15 encampment, )
                                              )
16                                            )
   vs.                                        )
17                                            )
   CITY OF NOVATO; CITY MANAGER )
18 ADAM MCGILL; MAYOR PAT EKLUND; )
   MAYOR PRO TEM ERIC LUCAN; CHIEF )
19 OF POLICE MATHEW MCCAFFREY; )
   PUBLIC WORKS DIRECTOR CHRIS )
20 BLUNK, ET AL. )
                                              )
21         Defendants                         )
                                              )
22                                            )
   _____)

23

### DECLARATION OF ANTHONY D. PRINCE

24

25         I, Anthony D. Prince, swear and affirm as follows:

26              1.  I, Anthony D. Prince am General Counsel for the California Homeless Union

27                  Statewide Organizing Council and attorney of record for the Marin County

28                  Homeless Union in the above-captioned matter.

*Declaration of Anthony D. Prince*

2.  Attached hereto as Exhibits A and B, respectively, are true and correct copies of Ordinance No.s 1669 and 1670  which were adopted by the Novato City Council on June 7, 2021.

3.  Attached hereto as Exhibit C is a true and correct copy of the City's Notice distributed to Camp Compassion on July 6, 2021.

4.  Attached hereto as Exhibit D is a true and correct copy of the Cease and Desist Letter and notice of intent to file and Ex Parte Application for Injunctive relief that I sent by email to the Novato City Manager and City Attorney on July 7, 2021, to which I never received a reply.

I swear under penalty of perjury under the laws of the United States that the foregoing is a true and correct statement based on personal knowledge.

Dated: July 13, 2021

Executed at Berkeley, California

Anthony D. Prince

*Declaration of Anthony D. Prince*

# Exhibit A

# Exhibit A

CITY COUNCIL OF THE CITY OF NOVATO

ORDINANCE NO. 1669

ORDINANCE OF THE CITY COUNCIL OF THE CITY OF NOVATO
ADDING SECTION 7-11 TO CHAPTER VII OF THE NOVATO
MUNICIPAL CODE REGARDING PROTECTION OF CRITICAL
INFRASTRUCTURE, WILDFIRE RISK AREAS AND YOUTH-
SERVING FACILITIES, AND AMENDING SECTION 14-20
REGARDING UNLAWFUL CAMPING

## SECTION I.  FINDINGS

The City Council of the City of Novato hereby finds and declares as follows:

**WHEREAS,** a principal threat to the public health, safety, and welfare is the potential destruction of, damage to, or interference with, infrastructure that is critical to the provision of public services such as law enforcement, fire prevention, educational services, transportation, and utilities including communication, water, and waste disposal; and

**WHEREAS**, destruction of, damage to, or interference with, critical infrastructure is often caused by fire, contamination, restricting access to such infrastructure by police, fire and other emergency response personnel, or other similar causes; and

**WHEREAS**, destruction of, damage to, or interference with, critical infrastructure is often caused by persons whose activities are not permitted or authorized in, on, or near critical infrastructure; and

**WHEREAS**, increased camping activities on public property obscure adverse and illegal activity from public view, contributes substantially to the accumulation of litter, clutter and visual blight, can interfere with pedestrian circulation, can obstruct or interfere with the lawful use of public spaces by the general public for their intended recreational uses, and inhibit the effective regulation and enforcement against illegal activities; and

**WHEREAS**, the City desires to establish its ability to prevent individuals from camping, occupying camp facilities, or using/storing camp paraphernalia near certain critical infrastructure in order to reduce the risk of destruction or damage to such infrastructure, or interference with the provision of services to and from such infrastructure.

**WHEREAS**, the City further desires to establish its ability to prevent individuals from camping, occupying camp facilities, or using/storing camp paraphernalia near youth-serving facilities, including child day care facilities, schools, and City playgrounds, in order to protect minor children from potentially deleterious effects of such activities.

**NOW THEREFORE, the City Council of the City of Novato does ordain as follows:**

**SECTION II.**          Section 7-11 of the Novato Municipal Code titled "Protection of Critical Infrastructure and Wildfire Risk Areas" is hereby added to read as follows:

ord704

**7-11.1          Purpose and scope**

The purpose of this section to mitigate the threat of fire and other potential causes of destruction and damage to and interference with, critical infrastructure, in order to protect the health, safety, and welfare of the public, by authorizing the removal of persons and their personal property in, on, or near critical infrastructure. The purpose of this section is further to protect the health, safety and welfare of minor children while using facilities specifically designed to serve that population.

**7-11.2          Regulated areas**

When used in this section, the following words and phrases have the following meanings:

*Camp* has the same meaning as in section 14-20.2 of this Code.

*Camp Facilities* has the same meaning as in section 14-20.2 of this Code.

*Camp Paraphernalia* has the same meaning as in section 14-20.2 of this Code.

*Critical Infrastructure* means any real property or facility, whether privately or publicly owned, as designated by the City Council by resolution, that the City Council determines in its discretion is so vital and integral to the operation or functioning of the city that its damage, incapacity, disruption, or destruction would have a debilitating impact on the public health, safety, or welfare. Critical infrastructure may include, but is not limited to, government buildings, such as schools, fire stations, police stations, jails, or courthouses; hospitals; structures, such as antennas, bridges, roads, train tracks, drainage systems, or levees; or systems, such as computer networks, public utilities, electrical wires, natural gas pipes, telecommunication centers, or water sources.

*Facility* means a building, structure, equipment, system, or asset.

*Hazardous Waste* has the same meaning as in California Public Resources Code section 40141.

*Infectious Waste* has the same meaning as in California Code of Regulations, title 14, section 17225.36.

*Wildfire Risk Area* has the same meaning as in California Code of Regulations, title 24, part 9, section 202.

*Youth-Serving Facility* means child day care facilities, public or private preschool, public or private primary or secondary school, public or private college and/or university, and public or private playgrounds.

**7-11.3          Prohibited activities and conditions**

a.  It is unlawful and a public nuisance for any person, including persons who would otherwise be entitled to camp on public property pursuant to Section 14-20.8, to camp, occupy camp facilities, or use camp paraphernalia at the following locations:

    1.  Critical infrastructure;

2. Within 50 feet of critical infrastructure;

3. Within 50 feet of a vehicular or pedestrian entrance to or exit from critical infrastructure;

4. On those portions of a right-of-way that are required by local, state, or federal law to be free of obstruction to first responders, including but not limited to members of law-enforcement, fire-prevention, or emergency-medical-services agencies; or

5. Wildfire risk area.

6. Youth-serving facilities.

7. Within 50 feet of youth-serving facilities.

b. It is unlawful and a public nuisance for any person, including persons who would otherwise be entitled to camp on public property pursuant to Section 14-20.8, to store personal property, including camp paraphernalia and camp facilities, in the following locations without the written consent of the property owner:

1. Critical infrastructure;

2. Within 50 feet of critical infrastructure;

3. Within 50 feet of a vehicular or pedestrian entrance to or exit from of critical infrastructure;

4. On those portions of a right-of-way that are required by local, state, or federal law to be free of obstruction to first responders, including but not limited to members of law-enforcement, fire-prevention, or emergency-medical-services agencies; or

5. Wildfire risk area.

6. Youth-serving facilities.

7. Within 50 feet of youth-serving facilities.

c. This section is not intended to prohibit overnight camping on private residential property by friends or family of the property owner.

d. Nothing in this section is intended to prohibit or make unlawful the activities of an owner of private property or other lawful user of private property that are normally associated with and incidental to the lawful and authorized use of private property for residential or other purposes; and nothing is intended to prohibit or make unlawful the activities of a property owner or other lawful user if such activities are expressly authorized by this Code or other laws, ordinances, and regulations.

**7-11.4      Abatement**

a. Any violation of sections 7-11 and/or 7-12 may be abated by the city upon 24 hours of prior notice; but a violation of sections 7-11 and/or 7-12 may be abated immediately by the city without prior notice, if the violation poses an imminent threat to public health or safety.

b. Abatement pursuant to subsection a., above, may include, but is not limited to: removal of camp facilities, camp paraphernalia, personal property, garbage, hazardous waste, infectious waste, junk, or debris; and securing the perimeter of the property with fencing, gates, or barricades to prevent further occurrences of the nuisance activity.

c. Regardless of the city's authority to conduct abatement pursuant to this section, every owner, occupant, or lessee of real property, and every holder of any interest in real property, is required to maintain the property in compliance with local, state, and federal law; and is liable for violations thereof.

d. The cost of abatement, including all administrative costs of any action taken hereunder, may be assessed against the subject premises as a lien, made a personal obligation of the owner, or both, in accordance with procedures in section 1-6 of this code.

e. No person shall willfully prevent, delay, resist, obstruct, or otherwise interfere with a city official, employee, contractor or agent in their execution of an abatement pursuant to this section.

**7-11.5      Violations**

Any violation of this section shall be punishable as a misdemeanor in accordance with section 1-5 of this Code and shall be deemed a public nuisance. Nothing in this section shall prevent the city from initiating a civil or administrative action, or any other legal or equitable proceeding, to obtain compliance with the provisions of this section. The remedies provided by this section are intended to be alternative methods of obtaining compliance and/or discouraging noncompliance with the provisions of this section and are expressly intended to be in addition to any other civil, criminal, or administrative remedies provided by law, including, but not limited to, Penal Code sections 602 and 647.

**SECTION III.**      Sections 14-20.5 and 14-20.6 of the Novato Municipal Code are hereby renumbered as Sections 14-20.6 and 14-20.7, respectively.

**SECTION IV.**      Section 14-20.5 of the Novato Municipal Code is hereby added to read as follows:

14-20.5 *Fires on public property.* It is unlawful and a public nuisance for any person to do the following on any public property:

a. Light or maintain any fire, unless such fire is lighted and maintained only in an apparatus or receptacle (including a fire pit, stove, barbeque or fire circle) provided by, owned, or maintained by the City of Novato for that particular purpose.

    b.  Leave a fire unattended by an adult or leave a location where a fire has been started, kindled and/or maintained until the fire has been completely extinguished and is cold to the touch.

**SECTION V.**        Section 14-20.7 of the Novato Municipal Code is hereby renumbered as Section 14-20.8 and is amended to read as follows:

Nothing in this section shall prohibit any person from camping <u>on public property</u> <u>between the hours of 9 p.m. and 7 a.m.</u> when all of the following circumstances are present:

    a.  At the time that the person is camping there are no beds in any shelter <u>or other accommodation</u> for homeless persons within the City <u>or otherwise reasonably accessible from the place</u> <u>where that person is camping</u> that are available to that same person; and

    b.  The person is not engaging in camping as a voluntary act. Under this section "voluntary act" shall mean camping during such time as there is shelter or lodging available to that person which that person willfully refuses to avail him/herself of for any reason unrelated to the exercise of a First Amendment or other state or federal constitutional right.

**SECTION VI.**        **CEQA**

This Ordinance has been assessed in accordance with the authority and criteria contained in the California Environmental Quality Act (CEQA) and the State CEQA Guidelines and it has been determined that approval of the ordinance is exempt from further environmental review under the general rule in California Environmental Quality Act (CEQA) Guidelines Section 15061(b)(3) that CEQA only applies to projects that have the potential for causing a significant effect on the environment. As a series of text amendments and additions without any physical project being approved, it can be seen with certainty that there is no possibility that the ordinance will have a significant effect on the environment.

**SECTION VII.**        **SEVERABILITY**

If any section, subsection, sentence, clause or phrase of this Ordinance is for any reason held to be invalid, such decision shall not affect the validity of the remaining portions of this Ordinance. The Council hereby declares that it would have adopted the Ordinance and each section, subsection, sentence, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases be declared invalid.

**SECTION VIII.**        **ENFORCEABILITY OF ORDINANCE**

In light of the existing COVID-19 public health emergency, this Ordinance shall not be enforced to clear encampments existing as of the Effective Date of this Ordinance until the earlier of the following:

    1.  The Centers for Disease Control and Prevention amends or revokes its Interim Guidance on Unsheltered Homelessness and Coronavirus Disease 2019 (COVID-19) for Homeless Service Providers and Local Official to no longer recommend local agencies allow individuals living unsheltered or in encampments to remain where they are.

ord704

2. COVID-19 vaccinations are accessible for individuals experiencing homelessness, at least 90 percent of County residents 16 year and older have been fully vaccinated, as defined by the California Division of Occupational Safety and Health, and the County meets the State of California requirements for the Yellow (Minimal) Tier in place as of May 25, 2021.

**SECTION IX.       CITY MANAGER TO PROMULGATE RULES AND REGULATIONS**

The City Manager is hereby authorized to promulgate rules and regulations to implement this Ordinance.

**SECTION X.       PUBLICATION AND EFFECTIVE DATE**

This ordinance shall be published in accordance with applicable provisions of law, by either:

   publishing the entire ordinance once in a newspaper of general circulation, published in the City of Novato, within fifteen (15) days after its passage and adoption,

   or

   publishing the title or appropriate summary in a newspaper of general circulation, published in the City of Novato, at least five (5) days prior to adoption, and a second time within fifteen (15) days after its passage and adoption with the names of those City Councilmembers voting for and against the ordinance.

This ordinance shall become effective 30 days after the date of its passage and adoption.

       *          *          *          *          *          *

I HEREBY CERTIFY that the foregoing ordinance was first introduced at a regular meeting of the Novato City Council on the 25th day of May, 2021, and was passed and adopted a regular meeting of the Novato City Council on the 8th day of June, 2021, by the following vote, to wit:

AYES:         Councilmembers Athas, Peele, Wernick, Lucan, Eklund
NOES:         Councilmembers None
ABSTAIN:      Councilmembers None
ABSENT:       Councilmembers None


/Pat Eklund/
_____
Mayor of the City of Novato


Attest:
    /Laura McDowall/
_____
City Clerk of the City of Novato


ord704

Approved as to form:
/Jeff Walter/
_____
City Attorney of the City of Novato

# Exhibit B

CITY COUNCIL OF THE CITY OF NOVATO

ORDINANCE NO. 1670

ORDINANCE OF THE CITY COUNCIL OF THE CITY OF
NOVATO ADDING SECTION 7-12 TO CHAPTER VII OF THE
NOVATO MUNICIPAL CODE REGARDING CONDUCT IN THE
STREAM PROTECTION ZONE

## SECTION I.  FINDINGS

The City Council of the City of Novato hereby finds and declares as follows:

**WHEREAS**, the City has a substantial interest in ensuring the protection, maintenance, enhancement and restoration of streams and riparian areas, which includes ensuring they are adequately protected from activity which might have a substantial negative impact on natural resources and the environment, and in ensuring the city's ability to comply with its statutory, regulatory and permitting obligations with respect to creeks and riparian areas; and

**WHEREAS**, the City's General Plan places strong emphasis on the "protection, maintenance and enhancement of Novato's natural resources…" including its creeks and riparian areas; and

**WHEREAS,** the City has established a Stream Protection Zone under Novato Municipal Code Chapter 19.35, which area includes the stream bed, the stream banks, all riparian vegetation and an upland buffer zone at least 50 feet wide on both sides of the stream, and establishes special requirements for development and land uses within the Stream Protection Zone; and

**WHEREAS**, the City now desires to further regulate individual conduct within the Stream Protection Zone which might have a negative impact on the City's natural resources and environment, including camping, urinating and defecating, and disposal of garbage in creeks and riparian areas.

**NOW THEREFORE, the City Council of the City of Novato does ordain as follows:**

**SECTION II.** Section 7-12 of the Novato Municipal Code titled "Creeks, Tributaries and Riparian Areas" is hereby added to read as follows:

### 7-12.1      Purpose

a.  This section shall govern individual conduct within the Stream Protection Zone, as established and defined in Division 19.35 of this Code, whether occurring on public or private property.

b.  The public health, safety, and welfare, as well as the City's ability to comply with its statutory, regulatory and permitting obligations with respect to the protection of its creeks, tributaries, riparian corridors and associated natural resources, require that the City adopt and enforce comprehensive regulations specifically prohibiting deleterious activities within these areas, whether located on public or private property.

ord705

   c.  The purpose of this section is to establish clear and direct requirements for the inspection and maintenance of the areas governed by this section and to authorize City enforcement of violations of the provisions of this section by individuals engaging in prohibited activity and/or property owners permitting prohibited activities or conditions to occur or be maintained on their properties.

**7-12.2**      **Prohibited activities and conditions**

It shall be unlawful and a violation of this section for any person to engage in or maintain, or for any property owner to allow or maintain, any of the following activities or conditions in the Stream Protection Zone:

   a.  Collecting, gathering, or disturbance of any natural or cultural resources, except for pruning, removal of materials or any other activities authorized under appropriate permits from state and/or federal agencies or in conjunction with permitted city-sponsored activities.

   b.  Camping, occupying camp facilities, or using camp paraphernalia.

   c.  Entering into or remaining within property to which public access is prohibited or restricted.

   d.  Driving or otherwise operating a vehicle, except as authorized in conjunction with otherwise permitted activity.

   e.  Using bicycles in areas not expressly designated for bicycle use.

   f.  Possessing or consuming alcoholic beverages.

   g.  Disposing of, depositing, throwing, keeping or accumulating trash, litter, rubbish, rubble, garbage, debris or other solid waste, dirt, green waste or animal waste.

   h.  Traveling outside of designated paths.

   i.  Posting any sign on a tree, tree-stake or guard, or fastening any wire, cable or rope to any tree, tree-stake or guard unless otherwise authorized by the city.

   j.  Urinating or defecating.

   k.  Making any excavation or unauthorized encroachment.

   l.  Possessing or discharging of weapons, firearms, paintballs, fireworks, or building fires, except a fire lighted and maintained only in an apparatus or receptacle (including a fire pit, stove, barbeque or fire circle) provided by, owned, or maintained within a park by the City of Novato for that particular purpose.

   m.  Any act in a regulated area constituting a violation of any provision of California Endangered Species Act, Endangered Species Act, the California Public Resources Code, or any regulation of the California Department of Fish and Game, or of any permit or approval issued by any federal, state or local agency having jurisdiction over the regulated area shall also be a violation of this section.

This section is intended to regulate individual conduct within the Stream Protection Zone. Nothing in this section is intended to alter, supplant or overrule the rules and regulations set forth for development and land use within the Stream Protection Zone under Division 19.35 of this Code, or to prohibit any activities lawfully permitted therein.

### 7-12.3    Violation and Abatement

Any violation of this section shall be punishable as a misdemeanor in accordance with section 1-5 of this Code and shall be deemed a public nuisance. Nothing in this section shall prevent the City from initiating a civil or administrative action, or any other legal or equitable proceeding, to obtain compliance with the provisions of this section. The remedies provided by this section are intended to be alternative methods of obtaining compliance and/or discouraging noncompliance with the provisions of this section and are expressly intended to be in addition to any other civil, criminal, or administrative remedies provided by law, including, but not limited to, Penal Code sections 602 and 647.

Any violation of this section may be abated pursuant to the provisions described in section 7-11.4 of this Code.

### 7-12.4    No liability on the city

Nothing in this section shall be deemed to impose any liability upon the City or upon any of its officers or employees, nor to relieve the owner or occupant of any private property from the duty to keep property in a safe condition.

### SECTION III.    CEQA

This Ordinance has been assessed in accordance with the authority and criteria contained in the California Environmental Quality Act (CEQA) and the State CEQA Guidelines and it has been determined that approval of the ordinance is exempt from further environmental review under the general rule in California Environmental Quality Act (CEQA) Guidelines Section 15061(b)(3) that CEQA only applies to projects that have the potential for causing a significant effect on the environment. As a series of text amendments and additions without any physical project being approved, it can be seen with certainty that there is no possibility that the ordinance will have a significant effect on the environment.

### SECTION IV.    SEVERABILITY

If any section, subsection, sentence, clause or phrase of this Ordinance is for any reason held to be invalid, such decision shall not affect the validity of the remaining portions of this Ordinance. The Council hereby declares that it would have adopted the Ordinance and each section, subsection, sentence, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases be declared invalid.

### SECTION V.    ENFORCEABILITY OF ORDINANCE

In light of the existing COVID-19 public health emergency, this Ordinance shall not be applied to prohibit camping or to clear encampments existing as of the Effective Date of this Ordinance until the earlier of the following:

ord705

1. The Centers for Disease Control and Prevention amends or revokes its Interim Guidance on Unsheltered Homelessness and Coronavirus Disease 2019 (COVID-19) for Homeless Service Providers and Local Official to no longer recommend local agencies allow individuals living unsheltered or in encampments to remain where they are.

2. COVID-19 vaccinations are accessible for individuals experiencing homelessness, at least 90 percent of County residents 16 year and older have been fully vaccinated, as defined by the California Division of Occupational Safety and Health, and the County meets the State of California requirements for the Yellow (Minimal) Tier in place as of May 25, 2021.

**SECTION VI.        CITY MANAGER TO PROMULGATE RULES AND REGULATIONS**

The City Manager is hereby authorized to promulgate rules and regulations to implement this Ordinance.

**SECTION VII.        PUBLICATION AND EFFECTIVE DATE**

This ordinance shall be published in accordance with applicable provisions of law, by either:

publishing the entire ordinance once in a newspaper of general circulation, published in the City of Novato, within fifteen (15) days after its passage and adoption,

or

publishing the title or appropriate summary in a newspaper of general circulation, published in the City of Novato, at least five (5) days prior to adoption, and a second time within fifteen (15) days after its passage and adoption with the names of those City Councilmembers voting for and against the ordinance.

This ordinance shall become effective 30 days after the date of its passage and adoption.

&ast;            &ast;            &ast;            &ast;            &ast;            &ast;

I HEREBY CERTIFY that the foregoing ordinance was first read at a regular meeting of the Novato City Council on the 25th day of May, 2021, and was passed and adopted a regular meeting of the Novato City Council on the 8th day of June, 2021, by the following vote, to wit:

AYES:        Councilmembers Athas, Peele, Wernick, Lucan, Eklund
NOES:        Councilmembers None
ABSTAIN:    Councilmembers None
ABSENT:     Councilmembers None

/Pat Eklund/
_____
Mayor of the City of Novato


Attest:
/Laura McDowall/
_____
City Clerk of the City of Novato

ord705

Approved as to form:

/Jeff Walter/
_____
City Attorney of the City of Novato

ord705

# Exhibit C

# NMC

## CITY OF NOVATO MUNCIPAL CODES



## NMC 7-11 CAMPING AND STORAGE NEAR CRITICAL INFRASTRUCTURE

- Government Buildings
- Utility Facilities
- Health Facilities as defined by 1250 H&S
- Train Stations and Train Tracks
- Water Sources and Levees
- Roads and Bridges along City Evacuation Routes
- Wildfire Risk Areas
- Youth Serving Facilities

No camping and no storage of property within 50 feet of areas defined as Critical Infrastructure by the City of Novato Municipal Code 7-11. This includes the entrance to such facilities.

## NMC 14-20.5 FIRES

No person shall light or maintain any fire unless the apparatus is provided by the City of Novato for that particular purpose.

## NMC 14-20.7

Prohibits camping and camping paraphernalia within a city park from 7 AM to 9 PM





**CITY OF NOVATO**
CALIFORNIA

# Exhibit D

# California Homeless Union
## Statewide Organizing Council



Office of the General Counsel, Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100, Berkeley, CA 94705
E-mail: princelawoffices@yahoo.com Phone: 510-301-1472

---

July 7, 2021

Adam McGill,
Novato City Manager
Jeffrey A. Walter,
Novato City Attorney
City of Novato Administrative Offices 922
Machin Ave.
Novato, CA 94945

Via Regular and Electronic Mail

### Re: Cease and Desist and Notice of *Ex Parte* Application

Dear Mr. McGill and Mr. Walter:

This office represents the California Homeless Union/Statewide Organizing Council. Our Marin County local union represents our homeless members in that part of Lee Gerner Park known as "Camp Compassion." You are hereby advised of the following:

1.      Yesterday, July 6, 2021, notices were distributed in Camp Compassion containing extremely brief and selective portions of recently enacted amendments to the Novato Municipal Code regarding restrictions on camping. (A copy of the Notice is attached to the Email message containing this letter.)

While the notices do not list potential legal consequences for violation of these sections, the posting of the notices is clearly designed to create the impression that the cited code sections are currently in effect. As such, the posting of the notices is a violation of the cited code sections themselves, which expressly recite that enforcement cannot begin until either 1) the CDC rescinds its guidance regarding the clearing of homeless encampments or 2) Marin County achieves a COVID-19 fully vaccinated rate of 90%. Neither of these conditions precedent to enforcement have been satisfied.

Therefore, we advise the City to cease and desist from any further such postings, distribution of notices or communications of any kind to the residents of Camp Compassion or anywhere else in the City of Novato that either expressly state, infer or could be reasonably interpreted to suggest that NMC Sections 7-11, 14-20.5 or 14-20.7 are currently in effect and need to be obeyed.

Furthermore, we strongly urge that the City notify those to whom it has distributed the notices that at this time they need not obey the restrictions on camping and will not be cited nor charged should they remain where they are presently camped.

2.      This is to further advise that whether or not the City complies with the above cease and desist demand, this office will, as soon as possible, file an *Ex Parte A*pplication for an injunction prohibiting the enforcement at any time of the NMC Code Sections 7-11, 14-20.5 and 14-20.7 and a declaratory judgment that the code sections as amended are facially unconstitutional and a violation of the Ninth Circuit's decision in *Martin v. Boise.*

Very truly yours,

/s/Anthony D. Prince,
General Counsel,
California Homeless Union