1  JEFFREY A. WALTER, State Bar No. 63626
   JWalter@chwlaw.us

2  **COLANTUONO, HIGHSMITH & WHATLEY, PC**
   670 W. Napa Street, Suite F
3  Sonoma, California 95476
   Telephone:  (707) 996-9690
4  Facsimile:  (707) 996-9603

5  CARMEN A. BROCK, State Bar No. 162592
   CBrock@chwlaw.us
6  LILIANE M. WYCKOFF, State Bar No. 293519
   LWyckoff@chwlaw.us
7  **COLANTUONO, HIGHSMITH & WHATLEY, PC**
   790 E. Colorado Boulevard, Suite 850
8  Pasadena, California 91101-2109
   Telephone:  (213) 542-5700
9  Facsimile:  (213) 542-5710

10 Attorneys for Defendants
   City of Novato, et al.

11

12

13

Colantuono, Highsmith & Whatley, PC
790 E. Colorado Blvd., Suite 850
Pasadena, CA 91101
SONOMA, CA 95476

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIN COUNTY HOMELESS UNION, a local affiliate of the CALIFORNIA HOMELESSNESS UNION, on behalf of itself and those it represents; CAMP COMPASSION, a Homeless Union-affiliated encampment in Lee Gerner Park; Individual Plaintiffs JASON SARRIS; LEA DEANGELO; ZACH BOULWARE; CARRIE HEALON, LISA NICOLE JOHNSON; DONALD HOBBS; DEBORAH ANN MIROMONTES; LISA JOHNSON; CHARLES TALBOT; BETHANY ALLEN; MICHELANGELO MONTEZ; DEBORAH ANN MIRAMONTES; KALANI WELSCH, and other similarly situated homeless persons including current residents of Camp Compassion homeless encampment,<br><br>                    Plaintiffs,<br><br>   v.<br><br>CITY OF NOVATO; CITY MANAGER ADAM MCGILL, MAYOR PAT EKLUND, MAYOR PRO TEM ERIC LUCAN, CHIEF OF POLICE MATHEW MCCAFFREY, PUBLIC WORKS DIRECTOR CHRIS BLUNK,<br><br>                    Defendants. | **CASE NO.: 4:21-cv-05401-YGR**<br><br>[Assigned to the Hon. Yvonne Gonzalez Rogers]<br><br>**JOINT STATEMENT RE: SETTLEMENT OF ENTIRE CASE** |

1    Pursuant to the Court's June 23, 2022 Order (Dkt 75) the parties are pleased to

2   report that, as of September 15, 2022, this matter has settled in all respects, including

3   Plaintiffs' claims for attorneys' fees and costs. The Novato City Council approved the

4   Settlement Agreement on July 26, 2022. The Settlement Agreement was fully executed

5   on September 15, 2022.

6    Pursuant to the terms of the Settlement Agreement, on August 23, 2022, the City

7   Council introduced amendments to Section 7-11.2 of the Novato Municipal Code. On

8   September 13, 2022, the City Council held a second reading of the proposed

9   amendments to Section 7-11.2 of the Novato Municipal Code. The amendments will be

10  effective October 13, 2022.

11    Once the amendments to Section 7-11.2 of the Novato Municipal Code are

12  effective, the parties will file a request for dismissal with prejudice which will include

13  a request that the Court retain jurisdiction to interpret and enforce the terms of

14  settlement. The request for dismissal will further request that the Court authorize

15  Magistrate Judge Illman to hear and decide all issues related to interpretation and

16  enforcement of the settlement.

17

18  DATED:  September 16, 2022        **COLANTUONO, HIGHSMITH & WHATLEY, PC**

19

20

21                    */s/ Carmen A. Brock*
                        JEFFREY A. WALTER
22                      CARMEN A. BROCK
                        LILIANE M. WYCKOFF
23                      Attorneys for Defendants

24  DATED:  September 16, 2022        **LAW OFFICE OF ANTHONY D. PRINCE**

25

26                    */s/ Anthony D. Prince*
                        ANTHONY D. PRINCE
27                      General Counsel,
                        California Homeless Union
28                      Attorney for Plaintiffs

Colantuono, Highsmith & Whatley, PC
790 E. Colorado Blvd., Suite 850
Pasadena, CA 91101
SONOMA, CA 95476

1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into between Plaintiffs Marin County Homeless Union ("Union"), a local affiliate of the California Homeless Union, on behalf of itself and those it represents; Camp Compassion, a Homeless Union-affiliated encampment in Lee Gerner Park; Individual Plaintiffs Jason Sarris, Lea Deangelo, Zach Boulware, Carrie Healon, Lisa Nichole Johnson, Donald Hobbs, Deborah Ann Miromontes, Lisa Johnson, Charles Talbot, Bethany Allen, Michelangelo Montez, Deborah Ann Miramontes, and Kalani Welsch (collectively, "Plaintiffs") in the case of *Marin County Homeless Union, et. al. v. City of Novato, et. al*, United States District Court for the Northern District of California, case number 21-cv-05401-YGR (the "Lawsuit") and Defendants City of Novato, City Manager Adam McGill, Mayor Pat Eklund, Mayor Pro Tem Eric Lucan, Chief of Police Mathew McCaffey, Public Works Director Chris Blunk, and the City Council for the City (together, "City") (each a "Party," and jointly, the "Parties") who agree as follows:

1. **Recitals.**

This Agreement is made upon these essential facts:

1.1     Plaintiffs filed their Lawsuit on July 14, 2021. (Dkt. No. 1.) The Lawsuit alleges in relevant part that City Ordinances Nos. 1669 and 1670 as drafted are constitutionally overbroad and vague and whose enforcement

1

**EXHIBIT TO JOINT STATEMENT RE SETTLEMENT OF ENTIRE CASE**

would result in selective enforcement against the Plaintiffs and the unhoused community in general.

1.2     On July 15, 2021, the Court issued a temporary restraining order and order to show cause for preliminary injunction.  (Dkt. No. 8.)

1.3     On July 23, 2021, the City moved to modify the temporary restraining order seeking clarification and modification of certain of the order's terms.  (Dkt No. 13.)

1.4     On July 27, 2021 the Court issued a written order granting in part and denying in part the City's motion to modify the temporary restraining order. (Dkt. No. 16.)

1.5     On July 27, 2021, the Court issued an order referring this case to Magistrate Judge Robert Illman for settlement purposes. (Dkt. No. 17.)

1.6     On October 18, 2021, the Court approved the Parties' Stipulation For Entry of a Preliminary Injunction ("Preliminary Injunction"). (Dkt. No. 54.)

1.7     The Preliminary Injunction provided in relevant part:

1.7.0  The City was empowered to establish a temporary camp ("Temporary Camp") within the City's Lee Gerner Park ("Park") and require all persons then camping within the Park to either (1) relocate to the Temporary Camp; (2) consider placement at the New Beginnings Shelter operated by Homeward Bound; (3) remove themselves and their property from the Park; or (4) be involuntarily removed from the Park;

1.7.1   If a campsite within the Temporary Camp was permanently vacated, the City would clear the vacant campsite within the Temporary Camp and not repopulate it;

1.7.2   All residents within the Temporary Camp had to abide by a Code of Conduct;

1.7.3   While the Temporary Camp exists, the City agreed to provide and pay for handwashing stations, portable bathrooms, weekly mobile showers, existing "wrap around services" such as housing outreach and healthcare coordination, trash collection, maintenance services and security.

1.8    The Preliminary Injunction was to remain in place until: (1) the Center for Disease Control ("CDC") withdrew, rescinded, or otherwise modified its COVID-19 Interim Guidance recommending against clearing homeless encampments; (2) the Parties entered into a settlement of the Lawsuit; or (3) the Preliminary Injunction was dissolved or modified by the Court, whichever occurred first.

1.9    On February 28, 2022 the Court held a Case Management Conference. (Dkt. No. 66.)

1.10   On March 2, 2022 the Court issued its pre-trial order setting a trial date of April 24, 2023. (Dkt. No. 67.)

1.11   On May 17, 2022, the Parties met with Judge Illman to negotiate the terms of the settlement of the Lawsuit as set forth herein.

4

2.    **Terms of Settlement**.

      2.1   Dismissal of the Lawsuit. Within 30 days of the date the ordinance amendment described in paragraph 2.6 below becomes effective, the Parties will jointly prepare and file a stipulated dismissal order for the Court's signature dismissing the Lawsuit with prejudice. The dismissal order will include all Parties' consent to transfer this case for all purposes to Magistrate Judge Robert Illman of the U.S. District Court for the Northern District of California.

      2.2   Preliminary Injunction. Immediately upon entry of the signed stipulated dismissal order, the Preliminary Injunction shall be dissolved and be of no further force or effect, except as provided in this Agreement.

      2.3   Temporary Camp. The City agrees to keep the Temporary Camp in place for the two (2) years immediately following entry of the stipulated dismissal order.

      2.3.0  The City Manager shall appoint a representative to oversee and operate the Temporary Camp. The City Manager's representative ("CM Representative") will collaborate with and reasonably consult the Union Designee (as identified in Section 2.9) regarding Temporary Camp operations. Except in those situations where a decision is necessary to mitigate or avoid an immediate or imminent threat to the public's or Temporary Camp's residents' health or safety, in which case the CM Representative shall have the sole authority to make that decision, in the

4

5

event a dispute arises between the City Manager's representative and the Union Designee, the matter shall be referred to the City's newly established Housing and Homeless Committee ("Committee") (as described in paragraph 2.4 below) which shall attempt to resolve the matter through a meet and confer process. If the Committee's meet and confer process is unsuccessful, the matter shall be referred to the City Manager for resolution. The City Manager's decision shall be final and binding on the Parties.

2.3.1 If at any time during the said two-year period the City Council makes a finding based on sufficient evidence that it no longer has, or is reasonably able to obtain, funds to continue operating the Temporary Camp and/or to keep the Temporary Camp in place, it shall notify the Union Designee and furnish the Union Designee with the specifics of the City Council's findings. Additionally, the City will deliver the Union Designee at least sixty-days' advance notice of the date the Temporary Camp will be closed and the date the residents will be required to vacate the Temporary Camp.

2.3.2 Three months before the expiration of the said two-year period, the City and the Union Designee, with the assistance of the Committee, shall undertake a review of the state of housing and homelessness in the City of Novato and provide the City Council its findings. The City Council shall determine whether there is need and sufficient funds to continue the operation of the Temporary Camp. The

285522.v2

6

continued operation of the Temporary Camp beyond the two-year period specified in this Agreement shall be at the sole discretion of the City Council.

2.3.3 During the two-year period all persons residing in the Temporary Camp will be subject to the following:

(a) The City will maintain the Temporary Camp as laid out in the Encampment Map attached to the Preliminary Injunction as Exhibit B. The City may make reasonable modifications to this Encampment Map and the facilities shown thereon. All proposed modifications shall first be shared with the Union Designee. Should the Union Designee disagree with a proposed modification, the matter shall be referred to the Committee which shall attempt to resolve the matter through a meet and confer process. If the Committee's meet and confer process is unsuccessful, the matter shall be referred to the City Manager for resolution. The City Manager's decision shall be final and binding on the Parties. The City will not reduce the number of campsites in the Temporary Camp unless utilization of the funds described in paragraph 2.5 to provide housing at the Temporary Camp results in a reduction in the number of living spaces in the Temporary Camp;

(b) If an authorized resident of the Temporary Camp ("Sheltered Camper") has vacated his/her space for 30 consecutive days without notifying the City (before or during that 30-day period) that she/he intends to return to his/her space immediately after the conclusion of said thirty-day period, then the Sheltered Camper shall be conclusively presumed to have permanently vacated his/her space. If the Sheltered

6

Camper cannot be located after the 30 consecutive day period, and he/she has not notified the City of the intent to return as aforesaid, the City may then remove that Sheltered Camper's tent and other personal property located in the Temporary Camp. Before removing personal items, the City shall attempt to locate the Sheltered Camper who the City believes owns the items and who has vacated the Temporary Camp and provide a reasonable opportunity for the Camper to reclaim the items. The City will store removed non-perishable items that do not constitute a health and safety risk for an additional period of seven (7) days. The Union Designee may be physically present, if available, during any such removal action by the City. At any time during the thirty-day waiting period or the seven-day storage period, the owner of the stored items may retrieve their personal property and may be accompanied by the Union Designee, if so desired, during the retrieval process;

(c) No storage of items shall be allowed outside the perimeter of the Temporary Camp. Personal items left outside the Temporary Camp over 48 hours are subject to being collected and discarded by the City, but only after an attempt to locate the owner has been made, and if located, the owner has been given the opportunity to reclaim or challenge the discarding of the objects. If desired, any such owner may be accompanied by the Union Designee when meeting with the City;

(d) The residents of the Temporary Camp are responsible for maintaining clear walkways within the Temporary Camp. Should any

285522.v2

8

item block ADA access or an evacuation route, the City may take immediate action to relocate the item to an appropriate area within the Temporary Camp. If the item cannot be reasonably relocated, the City may remove the item and will store it for seven (7) days, and if the item is not claimed and recovered by its owner within said seven (7) days, the City can discard it. If removal is necessary, the City will promptly notify the Union Designee of the removal and work with the Union Designee to identify the owner of the item before discarding the item;

(e) All persons residing in the Temporary Camp must adhere to the Code of Conduct attached to the Preliminary Injunction as Exhibit D. The City shall have the right to enforce all provisions of the Code of Conduct as allowed by law. Persons who fail to abide by the Code of Conduct may be required by the City to leave the Temporary Camp after being afforded advanced notice and opportunity to be heard, and if they should they so desire, to be accompanied by the Union Designee at any such meeting with the City;

(f) The City may send outreach workers into the Temporary Camp to offer services to the occupants of the Temporary Camp and placement at New Beginnings Center or any other housing opportunity that may become available. Residents of the encampment approached by outreach workers shall have the right, if so desired, to have the Union Designee present during such contacts. Police officers shall not provide such outreach;

285522.v2

9

(g) Only donations of food, clothing or small essential personal items may be accepted and brought into the Temporary Camp by Sheltered Campers; however, the City shall not be responsible for, or liable for, the safety, quality, use or disposal of any such items brought into the Temporary Camp. No large item donations will be allowed, unless specifically permitted by the City, which shall not unreasonably withhold such permission.

2.3.4 The City will take reasonable steps to ensure that vacant campsites within the Temporary Camp will be made available for occupancy to qualified homeless persons.

2.3.5 The Committee, once formed and approved by the City, shall create a list of criteria to be applied to determine whether a person is qualified to occupy a vacant space in the Temporary Camp ("Eligibility List") and shall present its proposed Eligibility List to the City Council. The final Eligibility List criteria shall be subject to the approval of the City Council.

2.3.6 The CM Representative shall review all potential new residents of the Temporary Camp to determine, based on the approved Eligibility List, whether to accept or deny an application to fill a vacant campsite within the Temporary Camp.

2.3.7 The Union Designee may recommend persons to occupy a vacant campsite. To do so, the Union Designee must notify the CM

10

Representative of the recommendation accompanied by the Union Designee's findings that the person meets the criteria of the Eligibility List.

2.3.8 The Union Designee shall notify the CM Representative of any vacancy at the Temporary Camp within twenty-four (24) hours of the creation of the vacancy.

2.3.9 Should the CM Representative make findings the Union Designee's recommended resident does not meet the criteria of the Eligibility List, the Union Designee may dispute the CM Representative's findings within three (3) calendar days after the Union Designee's receipt of the CM Representative's findings. Such a dispute will then be referred to the Committee which will attempt to resolve the matter through a meet and confer process developed by the Committee, which will thereafter make a recommendation to the City Manager. Failure of the Union Designee to timely dispute the CM Representative's findings shall be conclusively deemed an acceptance of those findings.

2.3.10 If the Committee's meet and confer process does not resolve the dispute, the matter shall be referred to the City Manager for resolution. The City Manager's decision shall be final and binding on the Parties.

2.3.11 If the person who is the subject of the procedures described in paragraphs 2.3.9 and/or 2.3.10 has moved into the Temporary Camp at the time the Union Designee notifies the City the Union Designee is recommending the person to occupy a space in the Temporary Camp, the

10

person may remain in the Temporary Camp until a final decision has been made as provided by paragraphs 2.3.9 and 2.3.10. If it is determined the person is ineligible to occupy a space in the Temporary Camp, the person shall immediately vacate the Temporary Camp and remove all their personal possessions. If, for some reason the person fails to vacate the Temporary Camp, the City may remove the ineligible person and their possessions from the Temporary Camp. The City agrees to notify the Union Designee before the person and possessions are removed from the Temporary Camp. If desired, the person to be removed shall have the right to have the Union Designee present during said removal.

2.3.12 The Temporary Camp shall operate and the persons who are occupying the Temporary Camp shall abide by the same rules and regulations and terms and conditions set forth in the Preliminary Injunction applicable to the Temporary Camp as set forth in Paragraph 2.3.3 above. A true and correct copy of the Preliminary Injunction is attached as Exhibit A and incorporated by this reference.

2.3.13 The City shall have the right, upon reasonable notice to the Union Designee (see paragraph 2.9 below), to physically inspect the Temporary Camp to determine the Union's and Plaintiffs' compliance with this Agreement.

2.4    Housing and Homeless Committee. The City Council shall establish, by separate action, a Committee comprised of community members, including representatives of the Union, whose purpose will be to

285522.v2

12

provide information to the City Council regarding housing and homeless issues within the City.

2.4.0  It is envisioned the Committee will be comprised of five to seven individuals, two of whom will be Union representatives. The Committee formation, procedures, frequency of its meetings, the level of staff support, the scope of its advisory duties, and all other matters pertaining to its function, authority and operation shall be decided, as required by law, by the City with input from the Union Designee.

2.4.1  The City may disband the Committee if any of the following events occur: (1) the City does not receive a sufficient number of applications to fill at least five seats on the Committee; (2) the Committee fails to obtain a quorum at three consecutive meetings; or (3) the Union fails to designate individuals to fill the two seats reserved for the Union representatives on the Committee.

2.5    State Funding for Interim Homeless Housing. The City acknowledges it has a one-time opportunity to seek funding from the State of California ("State") for interim homeless housing. The City agrees to apply for, and has applied for, the State funds and, if received, shall use the funds as described by the State within in the City. The City shall meaningfully consult with the Union Designee on the most effective use of the funds that are not subject to specific use restrictions imposed by the State.

2.6    Amendment to City Ordinance No. 1669. The City Council will consider, at a properly noticed and public hearing, amending the

12

13

definition of "Critical Infrastructure" set forth in Section 7-11.2 of the Novato Municipal Code as follows: "*Critical Infrastructure* **may be** ~~means~~ any real property or facility, whether privately or publicly owned, as designated by the City Council by resolution, that the City Council determines in its discretion is so vital and integral to the operation or functioning of the city that its damage, incapacity, disruption, or destruction would have a debilitating impact on the public health, safety, or welfare. ~~Critical infrastructure may include, but is not limited to, government buildings, such as schools, fire stations, police stations, jails, or courthouses; hospitals; structures, such as antennas, bridges, roads, train tracks, drainage systems, or levees; or systems, such as computer networks, public utilities, electrical wires, natural gas pipes, telecommunication centers, or water sources.~~"

2.6.0 As amended above, Ordinance No. 1669 may be enforced within the City of Novato. The City shall comply with all state and federal laws when enforcing Ordinance No. 1669.

2.6.1 Resolution No. 2021-042 contains the current operative designation of "Critical Infrastructure" within the City of Novato for purposes of Municipal Code Section 7-11.2.

2.6.2 The Parties agree that, if the City intends to make any further amendments to the designation of "Critical Infrastructure" by resolution, it will first consult with those persons within the City of Novato identified by the City as stakeholders, including but not limited to the Union Designee.

13

14

2.6.3 The Parties further agree that any proposed amendments to the designation of "Critical Infrastructure," shall be presented to the Housing and Homeless Committee. The Committee shall prepare and submit a recommendation on the proposed amendments to the City Council. The City Council shall consider the Committee's recommendation before adopting any resolution amending the designation of "Critical Infrastructure."

2.7 <u>City Ordinance No. 1670</u>. The Parties agree Ordinance No. 1670 is not in need of amendment and shall be enforceable as codified.

2.8 <u>Legislative Power of the City</u>. The Parties acknowledge the City may not contract away its legislative and governmental functions. (*Stephens v. City of Vista*, (1993) 994 F.2d 650, 655 (9th Cir. 1993), citing *Morrison Homes Corp. v. City of Pleasanton*, 58 Cal.App.3d 724, 734 (Ct. App. 1976).) Nothing in this Agreement is intended to do so.

2.9 <u>Union Representative</u>. The Parties acknowledge and agree that in implementing and performing under this Agreement, the Union represents and speaks on behalf of all Plaintiffs. In dealing with the Union in this Agreement's performance and implementation, the City may rely upon the representations made by, actions of, and positions taken by designated members of the Union ("Union Designee(s)"). The Parties further acknowledge and agree that Union Designee(s) must have and shall conclusively be deemed to have the authority to bind the Union and all Plaintiffs in this Lawsuit (i) to the obligations, promises and representations

14

15

imposed upon and made by the Plaintiffs and Union in and under this Agreement and (ii) in the Union's and Plaintiffs' performance of the terms and conditions of this Agreement. The Parties further acknowledge and agree that the City need only communicate with Union Designee(s) and need only rely upon and respond to communications from Union Designee(s) in connection with the Union's and/or the Plaintiffs' performance under this Agreement. The person designated to be the Union Designee for this Agreement shall be Plaintiff Jason Sarris. Any notices and communications to Jason Sarris shall be sent by email or personal delivery and addressed:

Jason Sarris

c/o Law Offices of Anthony D. Prince

2425 Prince Street, Suite 100

Berkeley, CA 94705

Notwithstanding the foregoing to the contrary, if any individual Plaintiff, or newly authorized resident of the Temporary Camp breaches this Agreement or violates the Code of Conduct, the City may proceed against that Plaintiff, or newly authorized resident of the Temporary Camp, directly and without communicating with the Union, unless this Agreement otherwise requires. Any notices and communications to the City shall be sent by email or personal delivery and addressed:

16

Adam McGill, City Manager

City of Novato

922 Machin Avenue

Novato, CA 94945

2.9.0 Successor Designee(s). If at any time, a Union Designee can no longer serve as Union Designee, the Union Designee who can no longer serve as such shall notify the City of same and the name and contact information of the successor Union Designee, if any.

2.9.1 Dissolution of the Union. Should the Union dissolve, otherwise cease to exist, or fail to appoint a Successor Designee as required by this Agreement, or should the Union Designee fail to perform his/her duties under this Agreement or fail to respond to requests or notices from the City to perform under this Agreement, the City's obligation under this paragraph 2.9 shall cease and anywhere in this Agreement where consultation with the Union or the Union Designee, or notice to the Union or Union Designee, or the presence of the Union or Union Designee or involvement of the Union or Union Designee is required, those requirements are extinguished and may be ignored by the City. The City may execute its binding obligations under this Agreement as it deems appropriate under the then existing circumstances without the need for further consultation with any third party.

285522.v2

17

3.    **General Provisions**

3.1    Enforcement. The Parties shall jointly prepare a stipulated dismissal order expressly requesting this Court agree to retain jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

3.1.0 Should a dispute arise over interpreting this Agreement, the Parties shall first meet and confer to attempt to resolve the matter.

3.1.1  If the meet and confer is unsuccessful, the matter will be referred to the Committee to weigh in on the dispute.

3.1.2 If the Committee's input does not resolve the dispute, the matter will be referred to Judge Illman, or if not Judge Illman, the Court's designee, to resolve the dispute.  The decision of Judge Illman (or Court's designee) shall be final and binding on the Parties.

3.2    Termination of Agreement. This Agreement shall terminate two years after the effective date of the Agreement unless the Parties elect to enter into a separate fully executed written agreement at least ten (10) days before the expiration of this Agreement.

3.3    Attorney's Fees.  If legal action is necessary to enforce this Agreement, the prevailing party shall be entitled to reimbursement of costs and attorney fees.

3.3    Entire Agreement. This Agreement contains the entire agreement between the Parties regarding the matter set forth herein and may not be altered, amended, or modified, except by a writing duly executed by

17

18

all Parties and approved by the Court. All prior agreements and understandings, oral agreements, and writings regarding the matters set forth herein are superseded and are of no further force or effect.

     3.4   <u>Independent Advice of Counsel.</u> The Parties represent and acknowledge each has been represented by counsel regarding this Agreement and any matters covered by or related to such Agreement. Each Party represents and acknowledges that it has been advised by its counsel regarding all rights that are affected and/or waived by this Agreement.

     3.5   <u>Governing Law.</u> This Agreement shall be construed and interpreted under the laws of the United States, and where applicable, the State of California.  If any Party to this Agreement sues to enforce or interpret this Agreement, the lawsuit shall be filed in the Federal District Court, Northern District for the State of California.

     3.6   <u>Construction.</u> The Settling Parties shall each be deemed to have participated in drafting this Agreement, and it shall not be construed against each or any of them.

     3.7   <u>Amendments in Writing.</u> This Agreement may not be altered, amended, modified, or otherwise changed except by a writing duly executed by each of the Parties. The Parties agree that they will make no claim at any time or place this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

     3.8   <u>Severability.</u> If any provision or any part of any provision of this Agreement is for any reason held to be invalid, unenforceable, or

18

19

contrary to any public policy, law, statute and/or ordinance, then the remainder of this Agreement shall not be affected and shall remain valid and enforceable.

  3.9 <u>Counterparts</u>. This Agreement may be executed in counterparts and as so executed, shall constitute an agreement that shall be binding upon all parties, notwithstanding that the signatures of all parties and/or their designated representatives do not appear on the same page. This Agreement may be transmitted by facsimile or other electronic means and the reproduction of signatures by facsimile or other electronic means will be treated as binding as if originals.  Any assembly of this Agreement with such signatures shall be deemed an original.

  3.10 <u>Authority of Signers</u>. Each person who executes this Agreement on behalf of a government entity, corporation, partnership, joint venture, unincorporated association, trust, or other entity will provide a contemporaneous resolution executed and approved by the governing board or body of the entity which demonstrates that person's authority to sign on behalf of the entity, copies of which shall be attached hereto as Exhibits B and C. Each person so signing represents and warrants to each party he or she has the authority of the governing body, shareholders, members, trustee(s), or beneficiaries of the entity to do so, and agrees to indemnify and hold harmless each other party from any claim that such authority did not exist.

285522.v2

20

3.11 <u>Effective Date</u>. This Agreement shall become effective upon the date that the stipulated dismissal is filed under paragraph 2.1.

3.12 <u>Fees and Costs.</u> Within 30 days of the date of dismissal of the Lawsuit with prejudice, the City shall issue payment to the Law Office of Anthony D. Prince in the sum of thirty-five thousand dollars ($35,000) as full and final compensation for all attorneys' fees and costs Plaintiffs may claim arising from this Lawsuit.

IN WITNESS WHEREOF, THE PARTIES EXECUTE THIS AGREEMENT ON THE DATES SET FORTH BELOW.

Plaintiff: Marin County Homeless Union

Dated: _July 8th 2022_            Signature: _____

                                    By Its: ____President____

Plaintiff: California Homeless Union

Dated: _July 8, 2022_             Signature: _____

                                    By Its: _LEAD ORGANIZER and GENERAL COUNSEL_

21

Plaintiff: Camp Compassion

Dated: July 8th 2022

Signature: _____

By Its: _____

Plaintiff: Jason Sarris

Dated: July 8th 2022

Signature: _____

Plaintiff: Lea DeAngelo

Dated: 7/8/22

Signature: _____

Plaintiff: Zach Boulware

Dated: _____

Signature: _____

Plaintiff: Carrie Healon

Dated: _____

Signature: _____

21

Plaintiff: Camp Compassion

Dated:_____          Signature: _____

                             By Its: _____

Plaintiff: Jason Sarris

Dated:_____          Signature: _____

Plaintiff: Lea DeAngelo

Dated:_____          Signature: _____

Plaintiff: Zach Boulware

Dated: 7/8/2022              Signature: _____

Plaintiff: Carrie Healon

Dated: 7/8/2022             Signature: _____

285522.v2

22

Plaintiff: Lisa Johnson, aka Lisa Nicole Johnson

Dated:_____          Signature: _____

Plaintiff: Donald Hobbs

Dated:_____          Signature: _____

Plaintiff: Deborah Ann Miromontes, aka Deborah Ann Miramontes

Dated:_____          Signature: _____

Plaintiff: Charles Talbot

Dated: July 8, 2022          Signature: _____

Plaintiff: Bethany Allen

Dated:_____          Signature: _____

Plaintiff: Michelangelo Montez

Dated: 07/08/22          Signature: _____

285522.v2

22

22

Plaintiff: Lisa Johnson, aka Lisa Nicole Johnson

Dated: 07/11/2022          Signature: _____
                                      ANTHONY PRINCE
                            ATTORNEY FOR LISA JOHNSON

Plaintiff: Donald Hobbs

Dated: _____     Signature: _____

Plaintiff: Deborah Ann Miromontes, aka Deborah Ann Miramontes

Dated: 07/11/2022          Signature: _____
                            ANTHONY D. PRINCE
                            ATTORNEY FOR DEBORAH
                            ANN MIRAMONTES

Plaintiff: Charles Talbot

Dated: _____     Signature: _____

Plaintiff: Bethany Allen

Dated: 7-8-2022            Signature: _____

Plaintiff: Michelangelo Montez

Dated: _____     Signature: _____

285522 v2

22

22

Plaintiff: Lisa Johnson, aka Lisa Nicole Johnson

Dated:_____    Signature:_____

Plaintiff: Donald Hobbs

Dated: 7/11/2022    Signature:_____

Plaintiff: Deborah Ann Miromontes, aka Deborah Ann Miramontes

Dated:_____    Signature: _____

Plaintiff: Charles Talbot

Dated:_____    Signature: _____

Plaintiff: Bethany Allen

Dated: 7-8-2022    Signature: _____

Plaintiff: Michelangelo Montez

Dated:_____    Signature: _____

285522.v2

23

Plaintiff: Kalani Welsch

Dated: 7-8-22                          Signature: _Kalani S_____

Defendant: City of Novato

By: Adam McGill, City Manager

Dated:_____              Signature: _____

Defendant: City Manager Adam McGill

Dated:_____              Signature: _____

Defendant: Mayor Pat Eklund

Dated:_____              Signature: _____

Defendant: Mayor Pro Tem Eric Lucan

Dated:_____              Signature: _____

285522.v2

23

Plaintiff: Kalani Welsch

Dated:_____          Signature: _____

Defendant: City of Novato

By: Adam McGill, City Manager

Dated: **9/15/2022**              Signature: _____

Defendant:  City Manager Adam McGill

Dated: **8/15/2022**              Signature: _____

Defendant: Mayor Pat Eklund

Dated:___9/13/2022___          Signature: _____

Defendant: Mayor Pro Tem Eric Lucan

Dated:__9/13/22___              Signature: _____

23

285522.v2

24

Defendant: Chief of Police Mathew McCaffrey

Dated:_____        Signature: _____

Defendant: Public Works Director Chris Blunk

Dated:_____        Signature: _____

**Approved as to Form and Content**

Jeffrey A. Walter

City Attorney for the City of Novato

Dated: 9/15/22              Signature: _____

Anthony D. Prince

Attorney for Plaintiffs

Dated: July 12, 2022        Signature: _____

285522.v2                              24

24

Defendant: Chief of Police Mathew McCaffrey

Dated: 9/14/2022                    Signature: _____

Defendant: Public Works Director Chris Blunk

Dated: 9/14/22                      Signature: _____

**Approved as to Form and Content**

Jeffrey A. Walter

City Attorney for the City of Novato

Dated:_____              Signature: _____

Anthony D. Prince

Attorney for Plaintiffs

Dated:_____              Signature: _____

285522.v2

**CERTIFICATE OF SERVICE**
*Marin County Homeless Union v. City of Novato, et al.*
United States District Court, Northern District
Case No. 4:21-cv-05401-YGR

I, Liz Maroshek, declare:

I am employed in the County of Sonoma, State of California. I am over the age of 18 and not a party to the within action. My business address is 670 W. Napa Street, Suite F, Sonoma, CA 95476. My email address is: lmaroshek@chwlaw.us. On September 16, 2022, I served the document(s) described as **JOINT STATEMENT RE: SETTLEMENT OF ENTIRE CASE** on the interested parties in this action as follows:

☒    **BY ELECTRONIC TRANSMISSION**: I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern District by using the CM/ECF system on September 16, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the USDC, Northern District CM/ECF system.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 16, 2022, at Pasadena, California.

*/s/Liz Maroshek*
Liz Maroshek

Colantuono, Highsmith & Whatley, PC
790 E. Colorado Blvd., Suite 850
Pasadena, CA 91101

1
*Case No.* 4:21-cv-05401-YGR
**CERTIFICATE OF SERVICE**

262489.1